In the Matter of PATRICIA L., Appellant, v STEVEN L., Respondent.

Second Department, September 8, 1986

## APPEARANCES OF COUNSEL

*John F. Clennan* for appellant.

*Jerome V. Giovinazzo* for respondent.

## OPINION OF THE COURT

Per Curiam.

Challenged on this appeal is the Family Court's exercise of

discretion in compelling the mother to proceed *pro se* in a custody hearing when her lawyer failed to appear on the morning of the hearing. While the conduct of the mother's lawyer seems inexcusable and we are quite cognizant of the calendar burdens borne by the Family Court, where the fate of children and their parents' rights with respect to them are the issues, the conflicting parties have a right to counsel in presenting the evidence that will resolve the issues. Whatever the ultimate merits of this case, the mother was deprived of the opportunity to present her side of the question, both with respect to her rights and the best interests of the children.

The dispute has its origin in an action for divorce brought by Patricia L. against Steven L. in which both parties sought custody of Steven, then 11, and Lynn, then 6. The custody issue was referred to the Family Court, and at 10:00 A.M. on October 7, 1983, the parties were present there for a hearing. Although both parents were represented by counsel, the mother's attorney was not in the courtroom when the matter was called. The colloquy between the father's lawyer and the court indicates that this was not the first time the mother's lawyer had been late, and that on the previous hearing date the matter had been marked final against the mother.

The father's motion to permit the hearing to proceed without the presence of the mother's counsel, or in the alternative, for a default judgment, was initially denied and the mother was given an opportunity to try to locate her lawyer. She called the lawyer's home and was told by the lawyer that she was just leaving and would be in court shortly. Despite having been informed that the lawyer was on her way, the court, over the mother's protest, proceeded with the hearing, requiring the mother to represent herself if she were to participate at all. The mother's lack of competence to represent herself is well demonstrated by the following colloquy that occurred when the court attempted to explain what was going to happen:

"THE COURT: Here's what I propose to do. I propose to give her a chance to take the stand—

"If you want to, realizing that Mr. Giovinazzo [the father's attorney] may cross-examine you. All right?

"THE PETITIONER [the mother]: Well—

"THE COURT: Would you just listen to me please? You keep interrupting which indicates to me that there is—

"THE PETITIONER: Well, I'm very upset.

"THE COURT: You're still interrupting—for the record. You've got to stop that. If you choose to take the stand, you may.

"I'll give you a chance, Mr. Giovinazzo, to put your client on. And then I will speak to the children and reserve decision on this case.

"MR. GIOVINAZZO: All right, Judge.

"THE COURT: Is that satisfactory?

"MR. GIOVINAZZO: That's satisfactory to me.

"THE COURT: Do you want to take the stand?

"THE PETITIONER: Can I ask a question? If I don't go on the stand, what will happen?

"THE COURT: You don't have to take the stand. Mr. Giovinazzo technically could call you but he'd be bound by your testimony.

"MR. GIOVINAZZO: No, I would not call her if she does not desire to take the stand.

"But, Judge, I would offer into evidence, of course, both reports: Dr. Hill's report and the report of the Social Worker.

"THE COURT: Oh, yes. The Court-Ordered reports have been made a part of the record of these proceedings.

"Now, do you want to take the stand?

"THE PETITIONER: So if I don't take the stand, you'll make a decision right away; is that right?

"THE COURT: That's not what I said. I'm gonna interview the children before I make a final decision in this case.

"THE PETITIONER: You mean today?

"THE COURT: I didn't say when.

"THE PETITIONER: I'm sorry.

"THE COURT: At some mutually convenient time.

"THE PETITIONER: I understand. Well, then, I'd rather wait then.

"THE COURT: Until I speak to the children?

"THE PETITIONER: Yes.

"THE COURT: But you're not gonna testify then?

"THE PETITIONER: I believe not. I just feel my attorney should be here. I'm upset. I guess I'm not clear what I should do, but I guess shouldn't—

"THE COURT; Look, frankly, I don't blame you for being upset.

"Do you want to put your client on the stand? She's chosen not to take the stand.

"MR. GIOVINAZZO: I'll put him on, Judge.

"THE COURT: All right, sit down Ma'am, and you can ask him questions after Mr. Giovinazzo is through, if you have any".

At the conclusion of the father's testimony, the mother attempted to cross-examine him briefly and then took the stand herself, testifying essentially in narrative form with the court asking a few questions to clarify her statements. After cross-examining the mother, the father's attorney was permitted to call his client's mother as a witness. During the testimony of this person, at approximately 11:25 A.M., the mother's lawyer entered the courtroom. After this lawyer offered excuses and apologies to the court, the father's lawyer continued his examination. When he finished, the mother's lawyer was given the opportunity to cross-examine, but she chose not to do so because she had not heard the direct testimony. She also declined to sum up for the same reason. She did, however, move for a "mistrial" on the ground that the hearing was conducted in her absence. That motion was denied, and, after interviewing the children in camera and considering the psychological reports which had been submitted, the court awarded temporary custody to the father, reserving decision on the ultimate issue pending receipt of the report of the Bureau of Child Welfare. Permanent custody was subsequently granted to the father in the order from which the mother now appeals.

The right to counsel in Family Court custody proceedings is established in Family Court Act § 262. Although prompted by the Court of Appeals recognition of the right to counsel in proceedings for the termination of parental rights (see, Matter of Ella B. [Kurtis—Jeri B.], 30 NY2d 352) and enacted as a means of providing assigned counsel for indigent persons (see, Family Ct Act § 261), the statute explicitly extends the right to counsel to parties in custody proceedings (Family Ct Act § 262 [a] [iii], [v]). The right is so important that the failure to advise a party of it is reversible error (Matter of Sabat v Sabat, 72 AD2d 585).

That the presence of counsel at every significant stage in the proceedings is an integral part of the right to counsel was established in Matter of Alexander L. (60 NY2d 329), where the Court of Appeals held that the statutory right to counsel

with respect to proceedings to terminate parental rights (Family Ct Act § 262 [a] [iv]) even entitled the respondent to the presence of counsel at a prehearing psychiatric examination, at least in the absence of a showing that the attorney's presence would impair the effectiveness of the interview. It is obvious, of course, that the right to the presence of counsel includes the hearing stage of the proceeding.

There can be no doubt that the mother's exercise of her right to counsel was compromised by the Family Court's refusal to wait for the counsel to arrive. Whatever her other shortcomings, the mother's lawyer recognized that her ability to represent her client effectively was completely destroyed by the fact that most of the hearing had been conducted in her absence. The prejudice to the mother from requiring her to proceed without counsel is also clear on the face of the record. She neither understood what was to take place nor was she in a position to make an intelligent choice as to whether or not to testify. Her attempts at cross-examination and presenting her own case were that of an inexperienced lay person. Palpably, she was unable to match the ability of a competent attorney to expose weaknesses in the opponent's case and present her own case in the most favorable light. The significance of the denial of skilled representation in this case is highlighted by the fact that the professional reports upon which the court primarily relied in its decision recommended that custody be awarded to the father essentially on the ground that he was the lesser of two evils. Effective counsel might have attempted to demonstrate that some other criterion was more appropriate or at least that the mother was the lesser of the two evils.

The right of a parent to enjoy the custody and companionship of his or her children is fundamental (see, Santosky v Kramer, 455 US 745, 753; Lassiter v Department of Social Servs., 452 US 18, 27-28; Stanley v Illinois, 405 US 645, 651). Although a custody determination does not involve so drastic an alteration as the termination of parental rights which was involved in the cited cases, the same important interest is nonetheless implicated (see, Quilloin v Walcott, 434 US 246, 255, reh denied 435 US 918; May v Anderson, 345 US 528, 533). Furthermore, the standard for adjudicating these issues —the best interests of the child (see, Domestic Relations Law §§ 70, 240; Friederwitzer v Friederwitzer, 55 NY2d 89, 95)— makes it apparent that the children's rights are a crucial factor in the determination of custody proceedings. To require

a party to try a custody case without benefit of counsel in order to prevent delay places the court's interest in moving calendars above the interests of both the children and the parents and gives unacceptable prominence to expediency. Misbehaving or careless lawyers can be punished but the onus for their conduct in child custody cases should be borne by neither the children nor the parents.

We are fully aware, of course, that adjournments are within the discretion of the trial court (see, CPLR 4402; *Matter of Anthony M.,* 63 NY2d 270; *Spodek v Lasser Stables,* 89 AD2d 892). The range of that discretion is narrowed, however, where a fundamental right such as the right to counsel is involved (see, *People v Spears,* 64 NY2d 698; see also, *People v Foy,* 32 NY2d 473). In *Matter of Shalom S.* (88 AD2d 936), a child abuse proceeding, we reversed an order removing a child from the parents' custody for 18 months, holding that the trial court's refusal of a brief adjournment so that counsel could be present deprived the parents of their right to counsel. Similarly, the Appellate Division, Fourth Department, has held that it was an abuse of discretion for the trial court to refuse an adjournment to permit the respondents to be present at a custody proceeding (see, *Matter of Jackson v Lee,* 96 AD2d 760), or to produce witnesses in a child neglect proceeding (see, *Matter of Tanya G.,* 79 AD2d 881).

Indeed, we have consistently enforced the requirement that custody determinations should be made only after a full and fair hearing (see, e.g., *Mosesku v Mosesku,* 108 AD2d 795; *Corso v Corso,* 48 AD2d 652) at which the record is fully developed (see, *Avella v Avella,* 74 AD2d 592). We can hardly affirm a ruling which inhibits the satisfaction of that standard.

Accordingly, there should be a reversal and remittal of the matter to the Family Court, Richmond County, for a new hearing.

LAZER, J. P., BRACKEN, NIEHOFF and KOOPER, JJ., concur.

Order of the Family Court, Richmond County, dated February 7, 1984, reversed, insofar as appealed from, without costs or disbursements, and matter remitted to the Family Court, Richmond County, for a new hearing and further proceedings consistent herewith.