■ In the Matter of CARL RADJPAUL, Respondent, v DAYLE PATTON, Appellant.—In a child custody proceeding pursuant to Family Court Act article 6, the mother, Dayle Patton, appeals from an order of the Family Court, Queens County (Gage, J.), dated January 13, 1987, which awarded custody of the child to Carl Radjpaul, the father.

Ordered that the order is reversed, on the law, without costs or disbursements, and the matter is remitted to the Family Court, Queens County, for a new dispositional hearing before a different Judge.

The subject of the instant proceeding is Carl Radjpaul Jr., who was born on June 23, 1982. At the time of Carl Jr.'s birth, Carl Radjpaul was married to Lolita Radjpaul, with whom he had been living for many years. When Dayle Patton gave birth to Carl Jr., she was already the unmarried mother

of a female child, Tiffany, who also resided with her. The parties had commenced their relationship when Mrs. Radjpaul was away on an extended trip to Jamaica.

In July 1985 Mr. Radjpaul filed a paternity petition in the Family Court, Queens County, resulting in an order of filiation and temporary order of visitation of the child with Mr. and Mrs. Radjpaul. Both orders were dated July 11, 1985. Shortly thereafter, Mr. Radjpaul filed a petition for custody of his son alleging that Ms. Patton had surrendered physical custody to him since the child was approximately one year old. Consequently, the child had become bonded to Mrs. Radjpaul, with whom he had purportedly resided for approximately 2½ years prior to the filing of the petition for custody. It was further maintained in the petition that Ms. Patton was the subject of an investigation by the Department of Social Services and that she lived in a cramped and filthy one-bedroom apartment with five adults and another child. It was concluded that the child's best interests and education necessitated his placement with Mr. Radjpaul. A custody hearing before Gage, J., was commenced February 25, 1986.

During the course of the hearing, Mr. Radjpaul maintained that Carl Jr. had resided with him and Mrs. Radjpaul for a longer period than with the mother. Ms. Patton controverted that assertion and testified that Carl Jr. had resided with her from 1982 until the time of the hearing with the exception of the interval from February to May 1985 when he resided with Mr. and Mrs. Radjpaul.

Rosemary Campbell, a social worker and personal friend of the Radjpauls, began to observe the child at the Radjpaul residence during the spring of 1983. After the summer of 1983, Carl Jr. resided with the Radjpauls on a permanent basis. The witness described the child as very happy at their residence.

According to Mrs. Radjpaul, she and her husband took Carl Jr. to Jamaica in September 1983 with the permission of Ms. Patton. Shortly after their return from that trip, they agreed to take over the care of the child on weekdays since Ms. Patton planned to attend school. Thus, the child resided with the Radjpauls, returning to Ms. Patton only on weekends, from October 1983 until May 1984 except for short intervals therein when Mrs. Radjpaul was hospitalized for a miscarriage. The child returned to the custody of Ms. Patton from June through August 1984. From September 1984 until June of 1985, he returned to the Radjpaul residence where he spent at least five nights per week. The Radjpauls also occasionally

cared for Ms. Patton's daughter during that interval. After the Radjpauls lost contact with Ms. Patton in September 1985, they hired a private detective to trace her.

Ms. Patton conceded that she had denied Mr. Radjpaul his visitation rights during October, November and December of 1985, despite her awareness of an existing court order awarding Mr. Radjpaul weekend visitation with the child. Ms. Patton left the jurisdiction for Seattle claiming that she was mentally and emotionally distraught.

In the opinion of Shirley White, a probation officer assigned to make a home visit to Ms. Patton's apartment, Ms. Patton is the appropriate custodial parent. She described the interactions between the child and Ms. Patton and the child and his sister as positive and found no indications of neglect or maladjustment. In her view, the child appeared to be comfortable, well adjusted and clean.

In a decision and order dated January 13, 1987, the Family Court concluded that "[w]hile neither parent is unfit, the evidence developed over numerous days of trial clearly established that the father is the superior custodial parent". The court credited the Radjpauls' testimony in finding that they presented a stable home environment, evinced a steady employment record and an extended family situation with numerous cousins who are approximately the same age as Carl Jr. Ms. Patton, on the other hand, had an intermittent work history and planned to seek a divorce from her current husband. The court found incredible much of her testimony concerning compliance with visitation schedules, child caring arrangements and prior living circumstances and concluded that Carl Jr.'s future "appears much more problematic with his mother than with his father".

Inasmuch as several errors occurred during the course of the hearing which unquestionably worked to the detriment of Ms. Patton, we conclude that the order appealed from, which awarded custody of the child to Mr. Radjpaul, was improvidently based and that a new dispositional hearing is warranted.

It is well settled that parental rights are not subject to curtailment in this State absent a meaningful opportunity to be heard which necessarily entails the assistance of counsel *(Matter of Orneika J.,* 112 AD2d 78, 80). Although a custody determination does not occasion so drastic an alteration as an outright termination of parental rights, the identical important interest is nonetheless implicated *(Matter of Patricia L. v*

*Steven L.,* 119 AD2d 221, 225). Family Court Act § 262 (a) (iii) and (v) explicitly extend the right to counsel to parties in Family Court custody proceedings. That right includes the party's entitlement to have counsel present from the time of his or her appearance in the subject proceeding *(see, Matter of Alexander L.,* 60 NY2d 329, 335, *mot for clarification denied* 61 NY2d 984). As this court has aptly recognized: "To require a party to try a custody case without benefit of counsel in order to prevent delay places the court's interest in moving calendars above the interests of both the children and the parents and gives unacceptable prominence to expediency. Misbehaving or careless lawyers can be punished but the onus for their conduct in child custody cases should be borne by neither the children nor the parents" *(Matter of Patricia L. v Steven L., supra,* at 225-226).

In the instant case, the court permitted the cross-examination of Ms. Patton to continue in the absence of her counsel due to the counsel's failure to promptly return to the courtroom after a 10-minute recess. Notwithstanding the unequivocally expressed tenet that the presence of counsel at every significant stage of the proceedings is an integral part of the right to counsel *(Matter of Patricia L. v Steven L., supra,* at 224), the Family Court permitted several questions to be asked of Ms. Patton on cross-examination prior to the reappearance of counsel. Counsel's immediate objection was overruled and his motion to dismiss was denied. In placing its interest in averting further delay above the interests of the parties, the Family Court gave unacceptable prominence to expediency and violated the precise caveat expressed in *Matter of Patricia L. v Steven L. (supra,* at 225-226).

Ms. Patton was further prejudiced by her exclusion from the courtroom during the cross-examination of a nonparty witness. On direct examination of Mrs. Radjpaul, Mr. Radjpaul's counsel questioned her regarding institutionalization of her daughter Sophia at a special care facility due to Mrs. Radjpaul's inability to handle the girl. When Ms. Patton's counsel attempted to broach the subject of Sophia on cross-examination, Mrs. Radjpaul indicated that she did not wish to discuss her child in Ms. Patton's presence. Ms. Patton was thereupon excluded from the courtroom, over counsel's objection, for that portion of the cross-examination.

It is beyond cavil that in the absence of an express waiver or unusual circumstances, a party has a right to be present at all stages of a trial *(Lunney v Graham,* 91 AD2d 592, 593; *accord, American Print Converters v JES Label & Tape,* 103

AD2d 787, 788; *Carlisle v County of Nassau,* 64 AD2d 15, *mot to dismiss appeal granted* 45 NY2d 965). There is nothing in the record to indicate either a compelling necessity for the exclusion of Ms. Patton or a knowing and intelligent waiver of her right to be present for the subject testimony *(see, Matter of Daniel A. D.,* 49 NY2d 788, 791). It bears noting that the issue of institutionalization of Mrs. Radjpaul's daughter was initially addressed by Mr. Radjpaul's counsel, thereby waiving any claim of confidentiality. Moreover, a key issue for determination was the fitness of Mrs. Radjpaul as a custodian for Carl Jr. The purpose of the cross-examination concerning her alleged inability to raise her own daughter was to impugn her qualification to serve as custodian for another's child. Under the circumstances, the exclusion of Ms. Patton from the courtroom during this portion of the hearing was unjustified.

We note furthermore that the court effectively denied Ms. Patton an opportunity to develop a full and complete record by rulings curtailing her counsel's cross-examination of Mrs. Radjpaul on the subjects of the latter's ability to care for her daughter Sophia when that child was approximately the same age as Carl Jr. and the underlying reasons for Sophia's institutionalization. Mr. Radjpaul's counsel, on the other hand, was permitted to question Ms. Patton concerning her relationships with other men. Ms. Patton's due process rights were further impaired when the court proceeded to take the testimony of a neighbor of the Radjpauls in the absence of Ms. Patton, whose nonpresence in the courtroom was explained by her counsel. Notwithstanding counsel's objection and request for a mistrial, the court proceeded with the hearing.

The prejudice occasioned to Ms. Patton by the cumulative effect of these errors cannot be overlooked. Accordingly, we reverse the order appealed from and remit the matter to the Family Court, Queens County, for a new dispositional hearing and determination by a different Family Court Judge. Kunzeman, J. P., Weinstein, Eiber and Spatt, JJ., concur.