██ In the Matter of DEBORAH J.B., Respondent, v JIMMIE LEE E., Appellant. (Proceeding No. 1.) In the Matter of JIMMIE LEE E., Appellant, v DEBORAH J.B., Respondent. (Proceeding No. 2.) [818 NYS2d 388]—

Appeal from an order of the Family Court, Monroe County (Julie Anne Gordon, R.), entered January 4, 2005 in a proceeding pursuant to Family Court Act article 6. The order granted the amended petition, dismissed the cross petition and granted sole custody of the two children to petitioner-respondent Deborah J.B.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously reversed on the law without costs, the cross petition is reinstated and the matter is remitted to Family Court, Monroe County, for a new hearing on the amended petition and cross petition in accordance with the memorandum, and

It is further ordered that, pending a new determination, petitioner-respondent Deborah J.B. shall retain legal and physical custody of the two children.

Memorandum: This matter involves a custody dispute concerning two children between their maternal aunt, the petitioner in proceeding No. 1 and the respondent in proceeding No. 2 (petitioner), and their father, the respondent in proceeding No. 1 and the petitioner in proceeding No. 2 (respondent). A portion of the testimony upon which the Referee relied in determining, pursuant to *Matter of Bennett v Jeffreys* (40 NY2d 543 [1976]), that extraordinary circumstances existed and that the best interests of the children would be served by granting custody to petitioner was taken at two final hearings at which respondent was not present. There is no indication in the record that respondent had notice of either of those hearings, nor was he represented by counsel at those hearings. We therefore agree with respondent that he was denied due process and that reversal is required.

Respondent was living with his wife and their children when his wife died, on February 17, 2004, but he was arrested and incarcerated on March 27, 2004. Respondent informally placed the children in the physical custody of their maternal uncle at that time, but the uncle soon placed the children in the physical custody of petitioner, who was caring for them when respondent was released from jail on June 11, 2004. At about that same time, both petitioner and respondent sought custody, and there were two appearances before the Referee between July 8, 2004 and September 20, 2004, as well as four hearings. A Law Guardian was appointed at the first court appearance and, although there was no custody order in effect at that time, the parties agreed to supervised visitation for respondent on July 11. No order setting forth the parties' agreement was signed until July 16, and the record establishes that respondent did not return the children to petitioner after his supervised visitation on July 11. At the July 21 hearing, respondent refused to inform the Referee of the children's location and, after a brief adjournment that day, respondent failed to return to court. At a hearing on July 22, the parties entered into a stipulation pursuant to which respondent, who had still not revealed the location of the children, agreed not to remove the children from Monroe County, and he agreed to a temporary order providing visitation to petitioner with the understanding that testimony would be continued in two or three weeks. After a hearing on September 20, 2004, the Referee stated on the record that "[t]he case on extraordinary circumstances is over," and she informed the par-

ties that they would be receiving a written decision on that issue and, if necessary, would be notified of a date for a hearing on the best interests of the children.

By letter dated October 20, 2004, the Law Guardian informed respondent's attorney that petitioner was not being afforded the visitation to which the parties had stipulated and that the older child had been absent from school that week, and petitioner's attorney registered the same complaints to respondent's attorney a few days later. By a subsequent letter to the Referee, the Law Guardian informed the Referee that he had learned specified additional facts that caused him to reiterate his position that extraordinary circumstances existed, and that it was in the children's best interests to grant custody to petitioner. The Law Guardian further set forth that respondent should not have unsupervised visitation with the children, and he sought an expeditious resolution of the issue of extraordinary circumstances.

On November 9 the Referee conducted the first of the two hearings in the absence of respondent and his attorney, although an associate was present with the attorney's affirmation of engagement seeking an adjournment. According to the affirmation, the attorney first received notice that he was to appear before the Referee on November 9 by letter from the Referee received on November 5. The associate also informed the Referee that respondent's attorney intended to move to withdraw. At the hearing on November 9, the Referee called petitioner as a witness and questioned her about her last contact with respondent. The record contains no evidence that respondent was aware that a hearing would be held that day, and the associate who appeared on behalf of respondent's attorney was unfamiliar with the case. The Referee granted a temporary order granting physical custody of the children to petitioner with no visitation to respondent, and the Referee adjourned the matter to December 7.

Respondent did not appear in court on December 7, and his attorney was permitted to withdraw in his absence. Respondent's attorney informed the Referee that he had discussed his motion to withdraw with respondent but did not tell respondent that the motion would be heard and that the hearing would be continued on December 7. Petitioner then called the older child's teacher to testify, and the Referee called petitioner to testify. Following the conclusion of the testimony, the Referee dismissed respondent's cross petition, granted petitioner's amended petition with no visitation to respondent at that time, and stated on the record her decision finding that extraordinary circumstances

existed and that it was in the best interests of the children to grant custody to petitioner.

We agree with respondent that he was deprived of due process when, in the absence of any indication in the record that he had notice of either of the last two hearings, and in the absence of an attorney knowledgeable about the case to represent him, the court relied in part on testimony elicited during those two hearings in deciding the issues of extraordinary circumstances and best interests against him. "It is beyond cavil that[,] in the absence of an express waiver or unusual circumstances, a party has a right to be present at all stages of a trial" (*Matter of Radjpaul v Patton*, 145 AD2d 494, 497 [1988]), and it is implicit that such right presupposes awareness that a court proceeding is scheduled. Here, there is no evidence that respondent was aware of the hearings on November 9 and December 7, much less that there would be hearings at which he was unrepresented. We note that, although the Referee had signed an order directing respondent to show cause on December 7 why counsel and his firm should not be allowed to withdraw, with service to be made on, inter alia, respondent personally or by certified mail at two addresses in Rochester on or before November 30, 2004, that order to show cause and the notice provided therein concerned only the application to withdraw. We thus conclude that the order to show cause did not provide the requisite notice that a hearing on extraordinary circumstances and best interests would be conducted on that date.

Thus, the order is reversed, the cross petition reinstated and the matter remitted to Family Court for a new hearing on the amended petition and cross petition, addressing any relevant changes in circumstances since entry of the order on appeal. Pending a new determination, petitioner shall retain legal and physical custody of the two children. Present—Kehoe, J.P., Gorski, Martoche, Smith and Pine, JJ.