■ In the Matter of the Guardianship and Custody of ORNEIKA J., an Infant. SHELTERING ARMS CHILDREN'S SERVICE, Respondent, v HARRIET J., Appellant.—Order, Family Court, Bronx County (Marks, J.), entered August 5, 1983, which terminated respondent-appellant's rights to the custody of her daughter, Orneika J., and committed the child's custody and guardianship to petitioner for purposes of adoption, unanimously reversed, on the law, without costs or disbursements, and the matter remanded for a new termination hearing to be held within 30 days of service of notice of entry of this order.

Although we believe that ample evidence exists in this record to justify the court's determination terminating respondent's parental rights because she was unable, by reason of mental illness, to provide adequate care for her daughter, we reverse, nevertheless, because respondent was denied her right to counsel at both the fact-finding and dispositional stages of the proceeding.

Respondent's child was born in May 1978 and in August 1978 was placed with petitioner, Sheltering Arms Children's Service, an authorized child-care agency. The infant's father abandoned the child some years ago and, though served with notice of these proceedings, has defaulted. The fact-finding hearing was originally scheduled for November 11, 1982. Respondent, who had also previously appeared for a psychiatric examination, appeared, and counsel was appointed to represent her. The matter was adjourned to January 20, 1983, at which time respondent again appeared, but the case was adjourned to March 10, 1983. Respondent did not appear on the latter date. On May 17, 1983, the next adjourned date, counsel informed the court that respondent had been committed to the psychiatric unit of Harlem Hospital since April 1, 1983 and requested an adjournment so that she could be present. The request was denied, but a guardian ad litem was appointed and the fact-finding hearing thereafter commenced on June 6, 1983.

Throughout the hearing respondent's counsel took the position, and so informed the court, that she would remain mute because she had been unable to communicate with her client. Counsel did not conduct any cross-examination nor produce any witness or documentation. Apparently counsel never communicated with respondent, who remained in the hospital during the hearing.

The evidence adduced at the fact-finding hearing established that respondent was a chronic undifferentiated schizophrenic, and that she had been hospitalized in the past due to the disorder. She had been hospitalized on April 1, 1983 after an incident at a bank in which she displayed aggressive and assaultive behavior, including spitting on customers. She had been living on the streets for at least the past few months. The record discloses that she suffers from numerous grandiose delusions and hallucinations and is apparently frightened of "living alone". A visit to her home by a social worker revealed it to be unlivable. She did not know the whereabouts of her family or siblings, had no available family for support or help,

and did not receive welfare or social service benefits, although she refused to divulge the source of her income.

On July 26, 1983, after the court had found that respondent was unable to care for her child, a dispositional hearing was held. Again her attorney requested an adjournment due to respondent's absence. Counsel told the court that respondent was in contact with her guardian ad litem and had said that she intended to be in court. The attorney also stated that her client had no telephone. The court, after noting that it was 3:15 P.M., then proceeded with the hearing.

As supportive as the record is of a finding that respondent's parental rights should have been terminated, such a finding may not stand if respondent was denied due process. Recognizing this, petitioner argues that respondent's failure to contest the proceeding was a strategy devised by counsel when she realized that respondent could not offer any defense to the petition. Unfortunately, however, the court did not make any inquiry at all after counsel had announced that she was going to stand mute. Thus, we do not know whether counsel had attempted to contact respondent at all or even whether she could have spoken to her in view of the nature of her hospitalization. The court did not elicit any information as to respondent's prospective discharge date or whether she could be temporarily released to attend court. Other than her election to stand mute counsel did not offer any information on the subject. Nor did the guardian ad litem.

The right to counsel in termination proceedings is guaranteed by statute (Family Ct Act § 262 [a] [iv]). Parental rights may not be curtailed in New York without " 'a meaningful opportunity to be heard, which in these circumstances includes the assistance of counsel.' " (*Matter of Ella B.,* 30 NY2d 352, 357, quoting *Cleaver v Wilcox,* 40 USLW 2658, 2659.) Since we cannot find that respondent was afforded the right to counsel in circumstances where it is not clear that her attorney, who did not participate in the trial, had even been in contact with her once she was hospitalized, there must be a new hearing. Nor can we find that counsel's nonparticipation was a trial ploy in which respondent or her guardian acquiesced.

Since the custody of a young child is involved, and a speedy resolution of her status is preferred, the matter should be handled expeditiously. Thus, we direct the commencement of a new hearing within 30 days. Concur—Sandler, J. P., Sullivan, Carro, Fein and Milonas, JJ.