CARE AND PROTECTION OF STEPHEN & others.[1]

Middlesex.   October 8, 1987. — November 12, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Minor,* Care and protection, Custody. *Parent and Child,* Care and protection
of minor, Custody of minor. *Practice, Civil,* Assistance of counsel.
*Evidence,* Authentication of document.

In a proceeding brought by the Department of Social Services under G. L.
c. 119, § 24, for the care and protection of four minor children, the
mother was entitled to effective assistance of counsel [148-149] and the
standard set forth in *Commonwealth* v. *Saferian,* 366 Mass. 89 (1974),
is appropriate for evaluation of claims of ineffective assistance of counsel
in such proceedings [149].

No exceptional circumtances obtained for this court to review a claim raised
for the first time on appeal of ineffective assistance of counsel at a care
and protection proceeding. [149-150]

No error appeared in a proceeding brought by the Department of Social
Services under G. L. c. 119, § 24, for the care and protection of four
minor children, in the judge's consideration of a letter to him written
by the mother, where any defect in the admissibility of the document
was cured by an evidentiary hearing on its authenticity. [150]

In a proceeding, under G. L. c. 119, § 24, brought by the Department of
Social Services for the care and protection of four minor children, the
judge's findings, detailing past as well as current mental illness of the
mother, were supported by the evidence and warranted his determination
that the mother was currently unfit to care for her children. [150-151]

In a care and protection proceeding brought by the Department of Social
Services, the judge properly concluded that the mother was currently
unfit to care for her four children where the findings and documentary
evidence indicated recent manifestations of the mother's mental illness.
[151-152]

Specific findings of the judge in a care and protection proceeding were
sufficient with respect to the mother's ability to care for each of her
four children to support his conclusions in awarding their respective
custody. [152-154]

---

[1] The other three children are Samuel, David, and Jane. The names as-
signed to this case are ficticious.

PETITION filed in the Framingham Division of the District Court Department on January 4, 1985.

The case was heard by *Robert V. Greco, J.*

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mary M. Collins* for the mother.

*Lisa A. Levy,* Assistant Attorney General, for Department of Social Services.

ABRAMS, J. The mother of four children appeals from a determination that her children should be placed in the care and protection of the Department of Social Services (department). On appeal, the mother asserts that her trial counsel was ineffective; that the judge erred by considering inadmissible evidence; that the judge's determination that she currently is unfit to care for her children is not supported by clear and convincing evidence; and that the judge failed to consider the particular needs of each child in his findings. We transferred the appeal on our own motion. For the reasons stated in this opinion, we affirm.

1. *Prior proceedings.* On January 4, 1985, a social worker for the department filed a petition for care and protection pursuant to G. L. c. 119, § 24, in the Framingham District Court on behalf of Jane. Following an emergency hearing held the same day, the department was granted temporary custody of the child. Counsel was subsequently appointed for both parents, although the record indicates that the father ultimately did not oppose the department's petition. On February 4, 1985, the department filed a motion to amend the petition to include the three older children in the family, Stephen, Samuel, and David. Temporary custody of these children also was awarded to the department. The investigator appointed pursuant to G. L. c. 119, § 23, filed her report on April 8, 1985. On April 29, 1985, various motions were heard and the matter was scheduled for trial on June 3, 1985.

Counsel for the parties, by stipulation, submitted the case to the judge on the basis of the investigator's report, certain medical and clinical records, and other documents. No oral evidence was offered. The mother was not present. Sub-

sequently, but prior to the issuance of the judge's written findings, the mother wrote the judge a ten-page letter explaining her view of the family's problems and her experiences with the department.

On August 2, 1985, the judge issued his "Findings, Ruling and Order" in which he allowed the department's petition and found all four children in need of care and protection. In his decision, the judge stated that he had considered the mother's letter in making one finding. The judge indicated that he would entertain any motion to reopen the evidence in light of this letter. The department filed a motion to reexamine the letter; the mother filed a motion for a new trial based on the judge's consideration of the letter. The judge allowed the department's motion to reexamine the evidence. After hearing he denied the mother's motion for a new trial.

On September 30, 1985, the judge heard evidence concerning the authenticity of the letter, as well as evidence on disposition. On October 16, 1985, the judge issued "Supplemental Findings and Order" in which he awarded the department temporary custody of the two older children, Stephen and Samuel, and permanent custody of David and Jane. The judge also found that the mother had, in fact, authored the letter. The mother filed a timely notice of appeal. In late 1985, the mother's trial counsel moved to withdraw from the case; in the spring of 1986, the mother's current counsel was appointed to pursue this appeal.

We summarize the findings of the judge. The parents were married in 1968, divorced in 1972, remarried in 1979, and divorced for a second time in 1980. Four children were born to the couple: Stephen (sixteen years old at the time of the judge's original findings);[2] Samuel (fourteen years old at the time of the findings); David (twelve years old at the time of the findings); and Jane (seven years old at the time of the findings). The father currently resides in Worcester and does not seek to

---

[2] Since the time of the judge's original Findings, Ruling and Order, Stephen has turned eighteen. Neither party has argued that this fact makes any difference to the issues raised.

take responsibility for the children. The mother has had several psychiatric hospitalizations since 1968, most of them since 1980. In 1981, the mother was diagnosed as "a severely disturbed woman whose ego functioning is borderline psychotic" and who "suffer[ed] from a severe sexual identity conflict and ideas of persecution . . . . Because of her disturbance, her capability of providing appropriate nurturance and protection to dependent children [was considered] severely limited." In January, 1982, the mother was diagnosed at Marlborough Hospital as having a "borderline personality disorder with suicidal ideation." In March, 1982, the mother made repeated calls to Worcester State Hospital threatening to commit suicide, although, on admission, she denied wanting to kill herself. On April 14, 1984, the mother was admitted to Worcester State Hospital after attempting to take her own life. She was hospitalized for four days and readmitted ten days later complaining of depression.

During June, 1984, the mother placed fifty-eight telephone calls to the Comprehensive Emergency Services of the Massachusetts Society for the Prevention of Cruelty to Children. Most of the calls concerned the mother's difficulty in managing her children; on those occasions, the mother was depressed or drinking or both. On August 8, 1984, the mother was admitted to Framingham Union Hospital for six days. The mother stated that she was going to prison for criminal contempt and felt like killing herself. On August 16, 1984, the mother told a clinician at Trinity Mental Health Center that she felt calmer but feared that she might harm her children.

On January 3, 1985, the mother reported to the Framingham police that her daughter, Jane, had been raped by a neighborhood friend. Jane stated that she had been raped, but, at other times, stated she had fallen on a barrel. Although the fall was confirmed by David, the mother and Samuel indicated that Jane had complained of a rape by the same friend the previous November. Although the friend denied raping Jane, there was evidence of sexual behavior inappropriate for a child of Jane's age.

On March 9, 1985, the mother was admitted to the Beverly Hospital for an overdose of Tylenol and Excedrin. On March 12, 1985, the mother was admitted to Newton-Wellesley Hospital complaining that she felt "out of control and suicidal." The examining doctor found that the mother was "anxious" and "irritable" but not "clinically depressed." The doctor found "no signs of psychosis, no hallucinations or delusions." She nonetheless remained at the hospital until March 19, 1985.

On March 21, 1985, the mother called her social worker at the department requesting that all four children be placed in foster care for several months; the mother then left her home. The Family Continuity Program arranged for the grandparents to stay with the children. On March 25, 1985, the mother again asked that her children be placed in foster care although she vacillated on that request. On March 29, the mother reported to the Family Continuity Program that she had hit Samuel with pliers. The Program verified the incident, and as a result of this incident and other problems at home, Samuel was placed in temporary respite care. At the time of the judge's findings, the mother admitted to having a drug problem for which she was receiving counseling.

2. *Ineffective assistance of counsel.* The mother contends that the stipulation by her trial counsel to submit the case to the judge on the basis of the investigator's report, hospital records, and other documents, many of which contained hearsay, constituted ineffective assistance of counsel. The mother asserts that counsel's agreement to submit the case on documentary evidence, thereby waiving her right to cross-examine the experts whose opinions were contained in the reports, constituted ineffective assistance of counsel. The mother contends that trial counsel's agreement virtually conceded the case to the department inasmuch as the judge based his disposition almost entirely on the reports and the psychiatric evaluations contained therein.

General Laws c. 119, § 29 (1986 ed.), provides: "Whenever a child is before any court under subsection C of section twenty-three or sections twenty-four to twenty-seven, inclusive, or section twenty-nine B, said child shall have and be informed

of the right to counsel at all hearings, and if said child is not able to retain counsel, the court shall appoint counsel for said child. The parent, guardian or custodian of such child shall have and shall be informed of the right to counsel at all hearings under said sections and in any other proceeding regarding child custody where the department of social services or a licensed child placement agency is a party . . . ." Because the department petitioned for the care and protection of the children pursuant to G. L. c. 119, § 24, the mother was, without question, entitled to the assistance of counsel. The right to counsel is of little value unless there is an expectation that counsel's assistance will be effective. Accordingly, we conclude that parents are entitled to the effective assistance of counsel pursuant to G. L. c. 119, § 29.[3]

We have addressed the question of effective assistance of counsel in the context of criminal representation, and we turn to those decisions as a guide in the context of care and protection proceedings. In *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974), we set forth a two-part test for examining and appraising the performance of counsel. First, we look to determine whether the "behavior of counsel [fell] measurably below that which might be expected from an ordinary fallible lawyer" and, if so, we further inquire "whether [counsel's conduct] has likely deprived the defendant of an otherwise available, substantial ground of defence." *Id. See Commonwealth* v. *Triplett,* 398 Mass. 561, 568 (1986); *Commonwealth* v. *Westmoreland,* 388 Mass. 269, 273 (1983); *Commonwealth* v. *Street,* 388 Mass. 281, 285 (1983). We think that the standard set forth in *Saferian* for judging the effectiveness of counsel's assistance is appropriate for evaluating claims of ineffective assistance of counsel in care and protection proceedings.

Although we have determined that a parent or guardian is entitled to effective assistance of counsel during any hearing

---

[3] In its brief, the department contends that the mother was not entitled to the effective assistance of counsel. At oral argument, counsel for the department conceded that the mother had a statutory right to counsel and that counsel's assistance must be effective.

covered by G. L. c. 119, § 29, and we have set forth the standard by which claims of ineffective assistance of counsel will be judged, we do not reach the merits of the mother's claim. As we noted in *Saferian, supra* at 90 n.1, "the preferred method of resolving factual disputes concerning the conduct of the original trial" is for the aggrieved party to file a motion for a new trial. Absent exceptional circumstances, we do not review claims of ineffective assistance of counsel for the first time on appeal.[4]

3. *Admissibility of the mother's letter.* The mother argues that the judge erred by considering her letter in making his findings and reaching his conclusions. The mother contends that her letter was not admissible because it was not authenticated until after the judge's determination that the children were in need of care and protection. We conclude that this claim of error has no merit.

Although the mother is correct in noting that the judge did not authenticate her letter prior to issuing his Findings, Ruling and Order, the judge reopened the evidence at the department's request in light of the letter. In his Supplemental Findings and Order, he found that the mother did, in fact, write the letter, a finding which is not disputed on appeal. Thus, any defect in the admissibility of the evidence was cured in the subsequent evidentiary hearing, and the judge was entitled to consider the information contained in the letter in making his findings.

4. *Sufficiency of the evidence.* In determining whether custody may be removed from a biological parent and awarded to the department the judge must find, by clear and convincing evidence, that the natural parent currently is unfit to further the welfare and the best interests of the child. *Custody of Two Minors,* 396 Mass. 610, 619 (1986). *Petition of the Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption,* 395 Mass. 180, 183 (1985).

---

[4] The mother, of course, now may file a motion for new trial on this ground in the trial court. We express no view on whether the allegations made on appeal are sufficient to establish the ineffective assistance claim. That issue is for the judge in the first instance.

*Custody of a Minor (No. 2)*, 392 Mass. 719, 725 (1984). *Care and Protection of Three Minors,* 392 Mass. 704, 711-712 (1984). The findings of the judge must be left undisturbed absent a showing that the findings were clearly erroneous. *Custody of Two Minors, supra* at 618. Moreover, the judge's findings in a custody proceeding must be specific and detailed so as to "demonstrat[e] that close attention has been given the evidence and that the necessity of removing the child[ren] from [their] parents has been persuasively shown." *Custody of a Minor (No. 1),* 377 Mass. 876, 886 (1979). See *Custody of Two Minors, supra* at 619.

We conclude that the department met its burden of proving parental unfitness under the "clear and convincing" standard. Moreover, the judge's detailed findings amply support his determination that the mother currently is unfit to care for her children. The judge made eighteen original findings and four supplemental findings in the course of his determination that these children should be removed from their mother's care. The judge's findings detail a history of past as well as current mental illness on the part of the mother which amply supports the determination that the mother currently is unfit to care for her children. The judge's findings are supported by the evidence and are thus not clearly erroneous.

The mother challenges the judge's findings as to her mental illness on the ground that the judge failed to find that she was suffering from a mental illness at the time of the hearing. The judge relied on, and adopted as part of his findings, three clinical evaluations made of the mother during periods of hospitalization between 1980 and 1985. The mother was variously described as being "borderline psychotic," as manifesting symptoms of a "borderline personality disorder" with "suicidal ideation" and as being "anxious and irritable" without exhibiting signs of psychoses or of clinical depression. While characterized somewhat differently, these evaluations indicated that the mother felt anxious, at times depressed, out of control, and, on several occasions, suicidal. Although these diagnoses spanned a considerable period of time prior to the custody adjudication, the judge's findings and documentary evidence

indicated recent manifestations of the mother's mental illness. In March, 1985, the mother was admitted to Beverly Hospital for a drug overdose and to Newton-Wellesley Hospital complaining that she felt out of control and suicidal. Additionally, the court investigator reported in 1985 that the mother was a "severely disturbed woman" whose ability to provide a secure home for her children was seriously deficient. Moreover, the judge found that the mother admitted to several incidents of physically abusing her children and expressed the fear that she would harm them again. Additionally, the mother admitted to having a drug problem.[5] We think that these factors amply demonstrate a nexus between the mother's mental illness and her inability to care for her four children.

Although the clinical diagnoses of the mother's condition were not all contemporaneous with the care and protection proceeding, the mother concedes that the judge may consider a past pattern of parental conduct for its prognostic value in determining current parental unfitness. See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 397 Mass. 659, 671 (1986); *Custody of Two Minors,* 396 Mass. 610, 621 (1986). Moreover, even if the diagnoses were not entirely consonant, we cannot agree with the mother that they are of no probative value in determining parental unfitness. In this case, clinical evaluations described similar characteristics of the mother's mental illness, namely, depression, anxiety, suicidal feelings, and a feeling of being out of control and prone to harming herself and her children. Thus, we cannot say that the judge committed clear error in making his findings, and that those findings were not based on clear and convincing evidence.

5. *Separate findings.* The mother contends that the judge erred by failing to make specific findings on the mother's

---

[5] We note that even if the judge was not entitled to consider the mother's admitted drug problem in making his findings, in light of the significant amount of evidence supporting the judge's determination that the mother was not currently fit to care for her children, the assumed error would not be so prejudicial as to require reversal of the judge's conclusions. See *Care & Protection of Three Minors,* 392 Mass. 704, 711 (1984).

ability to assume parental responsibility with respect to each child. For this proposition, the mother cites several cases wherein the department sought to dispense with parental consent to adoption pursuant to G. L. c. 210, § 3. See, e.g., *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 20 Mass. App. Ct. 689, 697 (1985); *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 16 Mass. App. Ct. 607, 610 (1983), rev'd on other grounds, 391 Mass. 113 (1984). While we have not imposed such a requirement on care and protection proceedings brought by the department pursuant to G. L. c. 119, § 24, even if we were to require separate specific findings with respect to each child, we believe that the judge's findings would be adequate in this matter. In his Findings, Ruling and Order of August 2, 1985, the judge found that Samuel had done poorly in school, was disruptive, and was diagnosed as psychologically at risk. By contrast, the judge noted that Stephen had done well at school and assumed responsibility for his younger siblings. Indeed, the judge concluded that "[i]t is far from clear . . . whether custody should be awarded to DSS on a temporary or permanent basis or whether any order by the Court should apply equally to all four children. At a dispositional hearing, the parties should address these issues along with such questions as whether [Stephen], in view of his age, need be taken from the home at all, whether all four children should remain together, whether the grandparents are in a position to assume responsibility for the care of some or all of the children, and whether the availability of services to the family during periods of [the mother's] stress would be sufficient to make placement out of the home unnecessary."

After the dispositional hearing, the judge additionally found that David was a slow learner in need of special services pursuant to St. 1972, c. 766; that he has limited impulse control and will tend to act out sexual or aggressive impulses if no proper limits are set for him; that he needs specialized services with respect to his sexual problems; and that his mother "is not able to set the limits and furnish the stable and structured home environment he needs." The judge further found that

Jane "needs individual and group psychotherapy and a stable home environment where her daily needs will be met on a regular basis and that [the mother] is not able to furnish that environment." The judge noted that Stephen and Samuel, both discussed in the original Findings, Ruling and Order, were residing with their grandparents and were functioning well, but needed counseling.

On the basis of these findings, the judge concluded that David and Jane were in need of "a permanent and stable environment which neither parent is able to give them," and awarded permanent custody to the department. The judge determined that Stephen and Samuel could return to the home once the mother secured steady employment, found an apartment and overcame her drug problem.

The judge's specific findings concerning the mother's ability to care for each of her four children were adequate, and there is no error warranting reversal of the judge's conclusions. The judgment awarding temporary custody of Stephen and Samuel and permanent custody of David and Jane to the department is affirmed.

*So ordered.*