781 S.W.2d 226 (1989)
In the Interest of J.C., JR. (a minor) and T.C. (a minor).
John R. JOHNSON, Chief Juvenile Officer, Respondent,
v.
J.K.C., SR., and L.K.C. (Natural Parents), Appellants.
No. WD 41759.
Missouri Court of Appeals, Western District.
December 12, 1989.
*227 Robert L. Hayman, Jr., Kansas City, for appellants.
Al Stover, St. Joseph, Guardian Ad Litem.
James A. Nadolski, St. Joseph, Nancy Melton, Independence, for respondent.
Before LOWENSTEIN, P.J., and KENNEDY and GAITAN, JJ.
PER CURIAM:
J.K.C., Sr., and L.K.C. appeal from an order terminating their parental rights of their two children, J.C., Jr., and T.C., ages eight and two respectively. J.C., Jr., a male child born November 11, 1981, was removed from his natural parents shortly after birth while in the hospital due to concern about the parents' ability to care for J.C. The petition alleged that the natural father had been diagnosed "as suffering mental retardation" and the natural mother had been diagnosed "as suffering from mental disorder of undifferentiated schizophreni[a]intellectual deficiency." At the August 17, 1982 hearing on the petition, the court assumed jurisdiction over J.C. but found that it would be in his best interests that he be returned to his parents under the close supervision of the Division of Family Services. On January 20, 1987, the court modified its August, 1982 order when it found that "the natural parents are unable to provide the necessary care, custody, maintenance and support in that this child is not progressing satisfactorily in his language and motor skills and his behavior is regressing; and further, he is subjected to improper hygiene and has had repeated cases of head lice". J.C. was then placed in the custody of the Division of Family Services and was placed in foster care.
T.C., a female child born June 24, 1987, was removed from her natural parents shortly after birth while in the hospital. A November 24, 1987 order found that "the natural parents are incapable of properly parenting said child due to mental limitations" and the Division of Family Services was given custody. T.C. was placed in foster care and has never been in the care of her natural parents.
The petitions to terminate parental rights were filed August 30, 1988. The petitions alleged that the natural parents have "mental conditions which are permanent or such that there is no reasonable likelihood these conditions can be reversed" and that "[t]his mental condition renders both the father and mother unable to knowingly provide the child with the necessary care, custody and control required by [them]". The hearing was held on the petitions to terminate parental rights on October 3, 1988. During this hearing, there was no live testimony; all the evidence was stipulated to. The court terminated the parental rights of J.K.C., Sr., and L.K.C. by finding that "the natural parents do not have the ability to care for these children, because of [the] mental condition[s] of both parents that are of a permanent nature."
J.K.C., Sr., and L.K.C. have appealed this order.
The natural parents raise an issue of first impression in this state; that is, whether the trial court erred in terminating their parental rights when they were not afforded effective assistance of counsel.
*228 Section 211.462.2, RSMo 1986, gives the natural parents the right to counsel in a termination of parental rights proceeding. Failure to appoint counsel to represent the natural parents or to obtain an affirmative waiver of that right has been held to be reversible error. B.L.E. v. Elmore, 723 S.W.2d 917 (Mo.App.1987). This statute implies a right to effective assistance of counsel; otherwise the statutory right to counsel would become an "empty formality". Matter of Bishop, 92 N.C.App. 662, 375 S.E.2d 676, 678 (1989).
Several states have recognized the viability of a claim of ineffective assistance of counsel in termination of parental rights proceedings. In the Matter of Appeal in Gila County Juvenile Action, 130 Ariz. 530, 637 P.2d 740 (1981); Matter of Christina H., 182 Cal.App.3d 47, 227 Cal. Rptr. 41 (1986); People in the Interest of V.M.R. 768 P.2d 1268 (Colo.App. 1989); In re R.G., 165 Ill.App.3d 112, 116 Ill.Dec. 69, 518 N.E.2d 691 (1988); In the Interest of J.P.B., 419 N.W.2d 387 (Iowa 1988); In the Interest of D.W., 385 N.W.2d 570 (Iowa 1986); In the Interest of Rushing, 9 Kan. App.2d 541, 684 P.2d 445 (1984); In re Stephen, 401 Mass. 144, 514 N.E.2d 1087 (1987); Matter of Trowbridge, 155 Mich. App. 785, 401 N.W.2d 65 (1986); In re Guardianship of Orneika J., 112 A.D.2d 78, 491 N.Y.S.2d 639 (1985); Matter of Bishop, 92 N.C.App. 662, 375 S.E.2d 676 (1989); In re Moseley, 34 Wash.App. 179, 660 P.2d 315 (1983). Some states have held that the Strickland test as to whether a convicted person was afforded effective assistance of counsel is also applicable to termination of parental rights cases, i.e., deficiency in counsel's performance and actual prejudice. People in the Interest of V.M.R., 768 P.2d at 1270; In re R.G., 116 Ill.Dec. at 78, 518 N.E.2d at 700; In the Interest of J.P.B., 419 N.W.2d at 392; Matter of Trowbridge, 401 N.W.2d at 66. Other states have relaxed the criminal standard and have held the test of ineffectiveness to be that "if it appears from the record that an attorney was not effective in providing a meaningful hearing, due process guaranties have not been met." In re Moseley, 660 P.2d at 318; see also In re Guardianship of Orneika J., 491 N.Y.S.2d at 641. We hold the latter standard is the correct one.
In this case, it is clear that J.K.C., Sr., and L.K.C. were deprived of effective assistance of counsel. There was no oral testimony. At the hearing, their attorney was entirely passive. He stipulated to the wholesale admission of all reports and records despite the fact that there were many objections that could have been made to the reports and records. He waived the right to cross-examine the authors of the reports. He called no witnesses despite the fact that there were two witnesses there on the parties' behalf that expected to testify. Neither of the parents testified. They were not present in the courtroom, but were in the courthouse. He offered no medical reports or other evidence on behalf of the natural parents. The transcript of the hearing regarding termination consists of only eight pages. Regarding the attorney's fee, the attorney testified that he had spent only eight and a half hours on the case from start to finish. There was also no active representation by the guardian ad litem on the children's behalf. "The role of the guardian ad litem involves more than perfunctory and shadowy duties.... The guardian ad litem is supposed to collect testimony, summon witnesses and jealously guard the rights of infants, which is the standard of duty in this state." In the Interest of J.L.H., 647 S.W.2d 852, 861 (Mo.App.1983). It seems that it was a foregone conclusion to everyone involved at the termination hearing that the result would be the termination of J.K.C., Sr., and L.K. C.'s parental rights. This conclusion comes from a statement by the parents' attorney in which he stated: "I have talked to the father, James, and he understands what we are doing. We explained to him the other alternative is the children would be put up for adoption, and they will never see the children. He understands that and I think to get them all in the courtroom would be disruptive to the [c]ourt and we wouldn't get anywhere." The right to counsel means nothing if the attorney does not advocate for his client and provide his *229 client with a meaningful and adversarial hearing. Neither J.K.C., Sr., and L.K.C. nor the children, J.C. and T.C., were provided with effective assistance of counsel.
The natural parents also raise two additional points in their appeal. We will not deal with them here. Both parties' research on these points will aid the trial court when it rehears the case.
The order terminating the parental rights of J.K.C., Sr., and L.K.C. is reversed and the case is remanded to the trial court for further proceedings in accordance with this opinion.