Filed 6/26/08 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2008 ND 131

Interest of K.L., a Child

Interest of M.S., a Child

State of North Dakota, Petitioner and Appellee

v.

T.L., Mother,                                                                          Respondent and Appellant

   ------------------

K.L., a child; M.S., a child;

B.A. and John Doe, fathers;

and S.S., father, Respondents

Nos. 20070309 & 20070310

Appeal from the Juvenile Court of Cass County, East Central Judicial District, the Honorable Cynthia Rothe-Seeger, Judge.

AFFIRMED.

Opinion of the Court by Kapsner, Justice.

Pam H. Ormand (argued), Assistant State’s Attorney, Courthouse, P.O. Box 3106, Fargo, ND 58508-3106, for petitioner and appellee.

Jessica Ahrendt (argued), 322 2nd St. N.W., Ste. C, P.O. Box 475, Valley City, ND 58072, for respondent and appellant T.L.

Interest of K.L. and M.S.

Nos. 20070309 & 20070310

Kapsner, Justice.

[¶1] T.L. appeals a juvenile court order terminating her parental rights to her two minor children, K.L. and M.S.  We affirm.

I

[¶2] T.L. is the biological mother of K.L., born in 2001, and M.S., born in 2004.  On June 7, 2006, T.L., K.L., and M.S. were residing in a home that was subjected to a probation search.  During the search, the searching officers contacted Cass County Social Services (“Social Services”) because they believed the conditions of the home were unsafe for T.L.’s children; the searching officers found drug paraphernalia, needles, pills, and alcohol, which were, according to the officers, within reach of the children.  K.L. and M.S. were removed from the residence and placed in protective custody after the officers finished a search of the home.

[¶3] On June 8, 2006, K.L. and M.S. were tested for drugs.  K.L. tested positive for amphetamines and methamphetamines; the test indicated low to medium exposure to both of these drugs.  M.S. was tested for drugs, and the test revealed the presence of amphetamines, methamphetamines, and cocaine in M.S.  M.S.’s drug test indicated a low exposure to cocaine and a moderate exposure to methamphetamine.

[¶4] On June 9, 2006, T.L. was tested for drug use, and her tests revealed the presence of amphetamines and marijuana.  S.S., M.S.’s father, who lived with T.L. and the children, also tested positive for drugs.  Social Services petitioned the juvenile court, alleging the children were deprived and requesting the juvenile court issue an order finding the children to be deprived.  In October 2006, the juvenile court issued an order finding K.L. and M.S. were deprived children.

[¶5] T.L. and her children were assigned a case worker, Ruby Knoll, on June 8, 2006.  The children remained in foster care following the juvenile court’s finding that the children were deprived, and T.L. was given supervised visitation with the children.  T.L. was active in all of the visitations offered.  Social Services made recommendations that T.L. obtain employment, obtain suitable housing, obtain a mental health evaluation and follow through with treatment for mental health issues, obtain a chemical dependency evaluation, and undergo treatment following the chemical dependency evaluation.  In accordance with the recommendations of Social Services, T.L. found an apartment and began working.  She did, however, change employment frequently and had trouble keeping her jobs.  She secured an apartment until January 2007.  Following an incident of domestic violence with S.S., with whom T.L. was sharing the apartment, T.L. felt she needed to find different housing.  According to T.L.’s testimony, she lived in a trailer she intended to purchase from a friend, after moving out of the apartment in January 2007 and until the time of the June 2007, termination proceeding.  T.L. testified she was unable to pay for heat, electricity, and water services, but continued to stay in the trailer without such services.

[¶6] Almost immediately after her children had been removed, T.L. successfully completed a chemical dependency evaluation, in which she was diagnosed with methamphetamine addiction, but she failed to follow-up with several treatment program options offered to her through Social Services; T.L. failed to complete a group therapy treatment program, and subsequently failed to complete an individual outpatient therapy program.  From July 2006 to March 2007, T.L.’s attendance in her outpatient treatment programs was at best sporadic.  T.L. also tested positive for methamphetamine use in December 2006, admitted to use in January 2007, refused a drug test in February 2007, and again tested positive for methamphetamine use in March 2007.

[¶7] Because of T.L.’s failure to comply with and complete any drug treatment programs, Social Services brought a petition for the termination of parental rights on March 22, 2007.  A hearing on the petition was held on June 21 and 22, 2007, and July 10, 2007, before Judicial Referee Susan Thomas.  In the midst of these hearings, on June 20, 2007, T.L. applied and was accepted into an inpatient methamphetamine treatment program, Teen Challenge.  She offered and admitted her acceptance letter into Teen Challenge during the June 21, 2007, termination hearing.  Prior to the July 10, 2007, hearing, T.L. applied and was admitted into another inpatient treatment program through the Robinson Recovery Center.  T.L.’s trial counsel did not submit evidence of T.L.’s entrance into the Robinson Recovery Center treatment program at the July 10, 2007, termination hearing.  At the hearings, the State presented the testimony of several social workers and addiction counselors.  T.L. also testified at the termination proceeding.

[¶8] On August 17, 2007, the judicial referee issued findings of fact, conclusions of law, and order for judgment terminating T.L.’s parental rights to both K.L. and M.S.

[¶9] T.L. requested a review of the judicial referee’s findings of fact, conclusions of law, and order for judgment, and the juvenile court adopted the findings and conclusions of the judicial referee and ordered the termination.

[¶10] T.L. appeals the order of the juvenile court, arguing the juvenile court erred in finding there was clear and convincing evidence that the conditions and causes of deprivation are likely to continue and that the children will probably suffer serious physical, mental, moral, or emotional harm.  T.L. also argues she was deprived of effective assistance of counsel.

II

[¶11] “To terminate parental rights, the petitioner must prove the child is deprived; the conditions and causes of the deprivation are likely to continue or will not be remedied; and the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm.”  
Interest of I.B.A. and C.B.A.
, 2008 ND 89, ¶ 15, 748 N.W.2d 688 (citing N.D.C.C. § 27-20-44(1)(c)(1)).  The party seeking parental termination bears the burden of proof and must prove all elements by clear and convincing evidence.  
Id.
 (citing 
Interest of T.A.
, 2006 ND 210, ¶ 10, 722 N.W.2d 548).  Clear and convincing evidence means evidence that leads to a firm belief or conviction the allegations are true.  
Id.
 (citing 
Interest of T.A.
, at ¶ 10).

[¶12] “‘A lower court’s decision to terminate parental rights is a question of fact that will not be overturned unless the decision is clearly erroneous.’”  
Interest of D.M.
, 2007 ND 62, ¶ 6, 730 N.W.2d 604 (quoting 
Interest of M.B.
, 2006 ND 19, ¶ 13, 709 N.W.2d 11).  “‘A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.’”  
Id.
 (quoting 
Interest of M.B.
, at ¶ 13).

A

[¶13] The first element of the three-part test requires a finding that the child is a deprived child. N.D.C.C. § 27-20-44(1)(b). A “deprived child” is a child who:

Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child’s physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child’s parents, guardian, or other custodian[.]

N.D.C.C. § 27-20-02(8)(a).  “We have defined ‘proper parental care’ to mean the minimum standards of care that the community will tolerate.”  
Interest of D.M.
, at ¶ 8 (citing 
Interest of M.B.
, at ¶ 14).

[¶14] According to the referee’s findings, K.L. and M.S. were found to be deprived children on October 3, 2006.  T.L. does not dispute K.L. and M.S. are deprived children.

B

[¶15] Instead, T.L. contends the juvenile court clearly erred in determining the conditions and causes of deprivation are likely to continue.

[¶16] The second element of the three-part test for a parental rights termination requires the State to prove the deprivation is “‘likely to continue or will not be remedied.’”  
Interest of D.M.
, at ¶ 11 (quoting N.D.C.C. § 27-20-44(1)(c)(1)).  “‘To show this, the State cannot rely on past deprivation alone, but must provide prognostic evidence, demonstrating the deprivation will continue.’”  
Id.
 (quoting 
Interest of M.B.
, at ¶ 16).

[¶17] T.L. argues that the “likely to continue” finding was clearly erroneous because Social Services was not compliant with its statutory duty of diligence in reunification efforts under N.D.C.C. § 27-20-32.2 and more diligence on the part of Social Services would have placed T.L. in an inpatient drug treatment program, which would have improved her ability to control the main cause of her children’s current and future deprivation.  T.L. also contends the juvenile court relied only on T.L.’s past conduct and existing drug addiction, rather than prognostic evidence in making the determination that the deprivation was likely to continue.

[¶18] Section 27-20-32.2(2)(b), N.D.C.C., requires the agency charged with the care of deprived children to make “reasonable efforts . . . to preserve and reunify families . . . [t]o make it possible for a child to return safely to the child’s home.”  The term “reasonable efforts” is defined as “the exercise of due diligence, by the agency . . . , to use appropriate and available services to meet the needs of the child and the child’s family . . . after removal, to use appropriate and available services to eliminate the need for removal and to reunite the child and the child’s family.”  N.D.C.C. § 27-20-32.2(1).

[¶19] Both the judicial referee and the juvenile court found reasonable efforts for reunification were made because Social Services developed a Single Plan of Care (“Plan”) immediately following the removal of T.L.’s children.  The Plan required T.L. to (1) undergo anger management and domestic violence evaluations and follow through with recommended treatment programs; (2) undergo chemical dependency evaluations and follow and complete treatment program requirements; (3) obtain full-time employment; (4) seek treatment for mental health issues, such as depression and follow through with treatment or medication; and (5) obtain safe and appropriate housing for the children.  T.L. does not argue the Plan was inadequate, but rather Social Services failed to provide T.L. adequate help in securing and completing the services offered to her.

[¶20] T.L.’s assertion is unsupported.  There is evidence in the record to support the juvenile court’s factual findings that T.L. repeatedly failed to attend her outpatient drug treatment program, that she failed several drug tests and refused another, and that Social Services provided T.L. with information regarding inpatient treatment programs, but T.L. did not attempt to enter the programs until the termination hearing was underway.  When T.L. did decide to pursue a more rigorous inpatient treatment program, T.L.’s case worker helped her complete and submit her treatment program application.  The record supports the juvenile court’s conclusion that T.L., not Social Services, was the cause of the failed reunification efforts.  Social Services made “reasonable efforts” when it created a comprehensive plan to address the reasons underlying T.L.’s children’s deprivation and provided T.L. with information and assistance in pursuing the Plan’s requirements.  “Reasonable efforts,” as defined by N.D.C.C. § 27-20-32.2(1), requires Social Services to provide available and appropriate services to assist the family in reunification, but Social Services is not required to assume the parent’s responsibility in following through with the services offered.  A parent’s “failure to follow through with provided services” is not the fault of Social Services.  
See
 
Interest of D.D.
, 2006 ND 30, ¶¶ 25-26, 708 N.W.2d 900.  
See also
 
Interest of M.B.
, 2006 ND 19, ¶ 21, 709 N.W.2d 11 (holding a parent’s choice “not to participate in” services offered by Social Services, did not constitute a failure to make reasonable efforts on the part of Social Services).

[¶21] T.L. next contends the juvenile court erred in finding there was clear and convincing evidence that the conditions and causes of deprivation are likely to continue and this determination was improper because the juvenile court relied on T.L.’s prior conduct and existing problems rather than prognostic evidence.  T.L.’s contentions are incorrect.

[¶22] As noted above, “‘the State cannot rely on past deprivation alone, but must provide prognostic evidence, demonstrating the deprivation will continue.’”  
Interest of D.M.
, at ¶ 11 (quoting 
Interest of M.B.
, at ¶ 16).  The judicial referee and juvenile court both relied on T.L.’s existing drug addiction and mental health problems for which T.L. failed to complete several different treatment programs.  In T.L.’s request for review, even T.L. acknowledges

[h]er addiction permeated all areas of her life and which undermined her ability to successfully address her chemical dependency . . . . [S]he obtained outpatient [chemical dependency] treatment, however, she was discharged for missing sessions and continued drug use.  She initiated individual counseling, however, she didn’t make followup appointments.  She sought therapeutic and medication evaluations for depression, however, she didn’t follow through.  She was able to obtain a job, however, she was unable to establish stable employment.  [T.L.] herself acknowledged her difficulties caused by her methamphetamine usage and testified that abstaining from it was a daily struggle.

 . . . [A]n expert on methamphetamine drug addiction[] testified to the specific aspects of meth addiction and recovery.  He testified that given the profound addictive qualities of methamphetamine outpatient treatment has a 15% success rate.

[¶23]  The juvenile court found T.L. failed to attend and complete outpatient treatment and did not pursue a more aggressive inpatient treatment program until the termination proceeding was underway.  The juvenile court also heard testimony from an addiction expert called by T.L. about the low success rates for methamphetamine treatment, even when the patient complies with the treatment program.  Relying on 
Interest of M.D.K.
, 447 N.W.2d 318, 322 (N.D. 1989), the juvenile court explained that, given the low likelihood for success in curing methamphetamine addiction even with the help of a treatment regime, T.L.’s failure to actively pursue and complete any treatment program made T.L. like the parent in 
M.D.K.
  In 
M.D.K.
, this Court held “it is not enough that a mother indicate a desire to improve.”  447 N.W.2d at 322.  “A parent must be able to demonstrate present capability, or capability within the near future, to be an adequate parent.”  
Id.
 (citation omitted).  The fact that T.L. had untreated addiction and mental health problems at the time of the hearing provided prognostic evidence that these problems would continue to exist and make deprivation of T.L.’s children likely.  The juvenile court did not clearly err in this finding.

C

[¶24] T.L. argues the juvenile court erred in determining there was clear and convincing evidence the children will probably suffer serious physical, mental, moral, or emotional harm.  The final element of the three-part parental rights termination test is “the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm.”  
Interest of M.B.
, at ¶ 18 (citation omitted).  “The risk of harm may also be shown by prognostic evidence.”  
Id.
 (citing 
Interest of A.S.
, 1998 ND 181, ¶ 31, 584 N.W.2d 853).  The juvenile court again noted T.L.’s failure to treat her addiction and mental health issues, which placed the children in continuing danger of serious physical, mental, moral, or emotional harm.  The addiction and mental health issues made it difficult for T.L. to maintain and provide adequate housing for the children, putting them in physical jeopardy.  T.L. failed to address and successfully treat issues of domestic violence that had occurred between T.L. and S.S.  The failure to treat and address these issues places the children in a position of probable serious physical, mental, or emotional harm.  The fact that both children had been exposed to several drugs and T.L. repeatedly failed or refused drug tests in the months leading up to the termination, places the children in probable serious physical harm because they would suffer exposure to drugs without T.L.’s successful completion of drug addiction treatment.  There is prognostic evidence in the record to support the juvenile court’s finding that the children will probably suffer serious physical, mental, moral, or emotional harm, and the juvenile court did not clearly err in arriving at its conclusion.

III

[¶25] T.L.’s final contention is that she was denied effective assistance of counsel.  T.L. premises her ineffective assistance of counsel claim on her trial attorney’s failure to offer and admit evidence of her entrance into the second inpatient treatment program through the Robinson Recovery Center during the July 10, 2007, termination hearing.

[¶26] Section 27-20-26(1), N.D.C.C., states that “[e]xcept as otherwise provided in this section, a party who is indigent and unable to employ legal counsel is entitled to counsel at public expense at custodial, post-petition, and informal adjustment stages of proceedings under this chapter.”  This Court has further explained that parent-child relationships are “powerful, intimate, and personal[,]” 
Adoption of K.A.S.
, 499 N.W.2d 558, 563 (N.D. 1993) (citations omitted), and we therefore recognize the need for legal protections not otherwise afforded in civil proceedings.  
See generally
 
Right of Indigent Parent to Appointed Counsel in Proceeding for Involuntary Termination of Parental Rights
, 92 A.L.R.5th 379 (2001).  Although the Legislature has expressly provided the right to counsel in a termination proceeding and this Court has explained the seriousness of the rights at stake in these proceedings, to date we have not decided whether a claim for ineffective assistance of counsel exists and, if so, what standard would be applied to demonstrate ineffective assistance of counsel occurred in a termination proceeding.  In 
Adoption of J.M.H.
, 1997 ND 99, ¶¶ 21-22, 564 N.W.2d 623, this Court declined to recognize a claim for ineffective assistance of counsel in a parental rights termination, explaining:

In termination proceedings, an indigent parent has a right to court-appointed counsel.  
Matter of Adoption of K.A.S.
, 499 N.W.2d 558, 563 (N.D. 1993).  In criminal cases, a party claiming ineffective assistance of counsel must provide this Court with some evidence to support the claim, unless the record affirmatively shows ineffectiveness of constitutional dimensions.  
E.g.
, 
State v. McDonell
, 550 N.W.2d 62, 64-65 (N.D. 1996).  Statements by counsel are not enough to support the claim, and we require some proof in the form of an affidavit or testimony.  
McDonell
 at 65.  Without an adequate record scrutinizing the reasons for counsel’s action, review is virtually impossible. 
McDonell
.

We have not recognized a claim for ineffective assistance of counsel in a civil action.  We do not decide whether such a claim is cognizable because, assuming we would adopt the claim, [the parent]’s general allegations of ineffective assistance of counsel in his brief and motion for rehearing were insufficient to establish his claim.  His conclusory statements do not meet the minimum threshold to support a claim for ineffective assistance of counsel.

[¶27] “Several states have recognized the viability of a claim of ineffective assistance of counsel in termination of parental rights proceedings.”  
Interest of J.C.
, 781 S.W.2d 226, 228 (Mo. App. 1989) (citing 
Matter of Appeal in Gila County Juvenile Action
, 637 P.2d 740 (Ariz. 1981), 
overruled on other grounds
, 
In re Pima County Juvenile Action No. S-919
, 646 P.2d 262 (Ariz. 1982); 
Matter of Christina H.
, 182 Cal.App.3d 47 (1986); 
Interest of V.M.R.
, 768 P.2d 1268 (Colo. App. 1989); 
In re R.G.
, 518 N.E.2d 691 (Ill. App. 1988); 
Interest of J.P.B.
, 419 N.W.2d 387 (Iowa 1988); 
Interest of D.W.
, 385 N.W.2d 570 (Iowa 1986); 
Interest of Rushing
, 684 P.2d 445 (Kan. App. 1984); 
In re Stephen
, 514 N.E.2d 1087 (Mass. 1987); 
Matter of Trowbridge
, 401 N.W.2d 65 (Mich. App. 1986); 
Guardianship of Orneika J.
, 112 A.D.2d 78, 491 N.Y.S.2d 639 (1985); 
Matter of Bishop
, 375 S.E.2d 676 (N.C. App. 1989); 
In re Moseley
, 660 P.2d 315 (Wash. App. 1983)).  The majority of states that recognize ineffective assistance of counsel claims in parental rights terminations have adopted the standard used in post-conviction relief proceedings following criminal actions as announced in 
Strickland v. Washington
, 466 U.S. 668, 688 (1984).  
E.g.
, 
Interest of J.C.
, 781 S.W.2d at 228 (citations omitted).  
See generally
 Susan Calkins, 
Ineffective Assistance of Counsel in Parental-Rights Termination Cases:  The Challenge for Appellate Courts
, 6 J. App. Prac. & Process 179 (2004).

[¶28] This Court has discussed the relationship between a statutory right to counsel and ineffective assistance of counsel claims in the context of post-conviction relief proceedings:

[T]he typical reasoning for applying 
Strickland
 [in a post-conviction proceeding] is that “[i]t would be absurd to have the right to appointed counsel who is not required to be competent,” and a statute providing for appointment of counsel “‘would be meaningless if it did not embody a requirement that counsel be effective as well as merely present.’”  
Lozada
 [
v. Warden
, 613 A.2d 818, 821 (Conn. 1992)] (quoting 
United States v. Wren
, 682 F.Supp. 1237, 1241-42 (S.D. Ga. 1988)).

Johnson v. State
, 2004 ND 130, ¶ 16, 681 N.W.2d 769 (first, second, and fourth alterations added; third alteration in original).

[¶29] The statutory right to court-appointed counsel in a parental termination proceeding is much like that in a post-conviction relief proceeding.  N.D.C.C. § 27-20-26(1).  The reasoning for ineffective assistance of counsel claims in post-

conviction relief claims is analogous and persuasive in the context of parental rights termination actions.  Because of the legislative directive that respondents be afforded counsel in termination proceedings, it would be absurd and meaningless to have the right to appointed counsel, but not to require counsel to be effective in this context.  
Johnson
, at ¶ 16 (citations omitted).  
See also
 
In re K.L.
, 91 S.W.3d 1, 11 (Tex. App. 2002) (adopting ineffective assistance of counsel claims in termination cases and explaining a parent whose parental rights were terminated due to counsel’s deficiencies has no meaningful remedy and monetary damages derived of a professional malpractice suit are inadequate due to the nature and severity of the interests involved).  Therefore, we acknowledge the need to recognize an ineffective assistance of counsel claim and apply the test announced in 
Strickland
.  466 U.S. at 688.

[¶30] The 
Strickland
 standard requires the party asserting a claim for ineffective assistance of counsel to show “counsel’s performance fell below an objective standard of reasonableness and the deficient performance prejudiced [the parent]” such that the likely outcome of the proceeding would have been different.  
See
 
Johnson
, at ¶ 17 (citing 
Kamara v. State
, 2003 ND 179, ¶ 5, 671 N.W.2d 811) (providing North Dakota’s adoption of the 
Strickland
 test in civil post-conviction relief proceedings). [¶31] In addition to demonstrating the elements of the 
Strickland
 standard, counsel’s deficiency must be readily apparent in the record on direct appeal in the context of termination cases.  We require this evidence to be readily apparent in the record because, unlike such claims in post-conviction proceedings, there is not a subsequent statutory proceeding that allows a party to develop a record or evidence for the alleged deficiency.  
See
 
State v. Torres
, 529 N.W.2d 853, 856 (N.D. 1995) (citations omitted) (“‘Without a record scrutinizing the reasons underlying counsel’s conduct, adjudging it subpar is virtually impossible.’ . . . ‘If we cannot readily determine that assistance of trial counsel was plainly defective, and no other grounds for reversal exist, the defendant can later pursue his claim at a postconviction proceeding where an adequate record can be developed.’”).  Thus, while we acknowledge a claim for ineffective assistance of counsel, in termination proceedings, it will be necessary for evidence of such a claim to appear on the face of the record because the claim is ordinarily raised on direct appeal.  
See
  
State v. Bengson
, 541 N.W.2d 702, 703 (N.D. 1996) (internal citations omitted) (“[For] claims [of] ineffective assistance of counsel on direct appeal, we examine the entire record.  If the record affirmatively shows that counsel was ineffective, we will consider the merits of the ineffectiveness claim.”).  We caution, however, that a review of these claims on direct appeal places a heavy burden on the party claiming ineffective assistance of counsel because “‘[w]ithout a record scrutinizing the reasons underlying counsel’s conduct, adjudging it subpar is virtually impossible.’”  
State v. Roberson
, 1998 ND App 15, ¶ 9, 586 N.W.2d 687 (quoting 
Torres
, 529 N.W.2d at 856) (alteration in original).

[¶32] In this case, the record does not establish T.L.’s ineffective assistance of counsel claim.  T.L.’s allegations do not show her trial counsel’s performance fell below an objective standard of reasonableness and the deficient performance prejudiced her such that the outcome of her termination proceeding would have been different as is required under the 
Strickland
 analysis.  The fact that T.L.’s attorney did not introduce evidence of T.L.’s acceptance into a second treatment program, which T.L. was allegedly accepted into sometime between the first termination hearings on June 20 and 21, 2007, and the final hearing on July 10, 2007, does not automatically establish an ineffective assistance of counsel claim.

[¶33] It is possible T.L.’s trial counsel opted not to introduce evidence of another treatment program application and acceptance because this evidence might serve to weaken T.L.’s statements about her commitment to her existing Teen Challenge inpatient treatment program.  Trial counsel may have decided such evidence might weaken T.L.’s contention that Social Services did not provide T.L. with reasonable efforts to provide her with available treatment services.  Under the 
Strickland
 analysis, “‘[a]n unsuccessful trial strategy does not make defense counsel’s assistance defective, and we will not second-guess counsel’s defense strategy through the distorting effects of hindsight.’”  
Garcia v. State
, 2004 ND 81, ¶ 8, 678 N.W.2d 568 (quoting 
Breding v. State
, 1998 ND 170, ¶ 9, 584 N.W.2d 493).  Trial counsel’s conduct is presumed to be reasonable.  
DeCoteau v. State
, 2000 ND 44, ¶ 8, 608 N.W.2d 240 (citing 
Lange v. State
, 522 N.W.2d 179, 181 (N.D. 1994)); 
see also
 
In re Geist
, 796 P.2d 1193, 1203 (Ore. 1990) (recognizing ineffective assistance of counsel claims in parental rights terminations, but explaining that even under a standard more searching than 
Strickland
, “an attorney’s choice of a particular theory of the case, the choice to call or not to call a particular witness, the choice to ask or not to ask certain questions, or the choice of a particular line of argument, will be tactical decisions.  The mere fact that a tactical decision may backfire on counsel does not necessarily demonstrate that counsel was professionally inadequate”).  Thus, because there were reasonable strategic advantages for failing to offer evidence of the second inpatient program or to move for a continuance on that premise, given the deference to counsel in matters of strategy, T.L.’s assertions do not rise to the level of ineffective assistance of counsel.

IV

[¶34] We affirm the order of the juvenile court.

[¶35] Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.