2010 ND 46

In the Interest of K.J., a child.

In the Interest of D.J., a child.

In the Interest of L.J., a child.

Pam Sand, L.S.W., Petitioner
and Appellee

v.

R.J., Mother, Respondent
and Appellant.

Director, Cass County Social Services; K.J., a child, D.J., a child; L.J., a child; John Doe and R.G., fathers; and Kathy Kassenborg, Lay Guardian ad Litem, Respondents.

Nos. 20090263, 20090265.

Supreme Court of North Dakota.

March 16, 2010.

Constance Louise Cleveland, Assistant State's Attorney, Fargo, N.D., for petitioner and appellee.

Jared Sharp Simonson, Fargo, N.D., for respondent and appellant.

CROTHERS, Justice.

[¶ 1] R.J. appeals from a juvenile court order adopting a judicial referee's decision to terminate her parental rights to her three minor children. We conclude the district court did not clearly err in finding that the conditions and causes of deprivation and the deprivation are likely to continue and that the termination of R.J.'s parental rights is necessary to prevent physical, mental or emotional harm to the children. We further conclude that N.D.R.App.P. 2.2, as applied in this case, did not unconstitutionally infringe on R.J.'s right to procedural due process. We affirm.

I

[¶ 2] R.G. is the putative father of three minor children, and R.J. is their mother. In April 2007, the children were placed into protective custody with Cass County Social Services because of exposure to parental drug use, parental domestic violence, and unsuitability of the children's home. In May 2007, the juvenile court found the children were deprived and placed them in the full custody of Cass County Social Services for one year with authorization for out-of-home placement. R.J. was ordered to comply with a treatment plan in an effort to reunite her with her children. In February 2008, the State filed a petition for the termination of the parental rights of R.J. and of R.G.

[¶ 3] In January 2009, the judicial referee bifurcated the proceedings and terminated the parental rights of R.G. In February 2009, a trial on the petition to terminate R.J.'s parental rights was held before a judicial referee. In April 2009, the judicial referee issued findings and an order, terminating R.J.'s parental rights. R.J. requested juvenile court review of the judicial referee's findings and order. In August 2009, the juvenile court adopted the judicial referee's findings and order. In September 2009, R.J. filed a notice of expedited appeal under N.D.R.App.P. 2.2.

II

[¶ 4] Under N.D.C.C. § 27–20–44(1)(c), a court may terminate parental

rights if clear and convincing evidence establishes: "(1) the child is a deprived child; (2) the conditions and causes of the deprivation are likely to continue; and (3) the child is suffering, or will in the future probably suffer serious physical, mental, moral or emotional harm." *Interest of J.S.L.*, 2009 ND 43, ¶ 12, 763 N.W.2d 783; *see also Interest of D.D.*, 2006 ND 30, ¶ 18, 708 N.W.2d 900. "Clear and convincing evidence means evidence that leads to a firm belief or conviction the allegations are true." *Interest of K.L.*, 2008 ND 131, ¶ 11, 751 N.W.2d 677. Under N.D.C.C. § 27–20–44(1)(c)(2), a court may also terminate parental rights if the child is a deprived child and the court finds: "The child has been in foster care, in the care, custody, and control of the department, or a county social service board, ... for at least four hundred fifty out of the previous six hundred sixty nights."

[¶ 5] "On appeal, findings of fact in juvenile matters shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. N.D.R.Civ.P. 52(a)." *Interest of J.S.L.*, 2009 ND 43, ¶ 12, 763 N.W.2d 783. "A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law." *Interest of B.J.K.*, 2005 ND 138, ¶ 10, 701 N.W.2d 924.

[¶ 6] In this case, R.G. has not appealed the termination of his parental rights. In terminating R.J.'s parental rights, the judicial referee found that the children were adjudicated deprived children on May 22, 2007, were placed in the full custody of Cass County Social Services for a period of one year with authorization for out-of-home placement and have continued to reside in foster care with their maternal grandmother since that time. The judicial referee found that although a service plan was put in place to reunify the children with their mother, including provision for a number of service plan goals and treatment, R.J. had been unable to complete the treatment plan and the children remained in out-of-home placements. After the termination petition was filed, R.J. was arrested for hindering law enforcement and for driving under the influence. The referee found that in March 2009, R.J. began serving a 48–month sentence for her involvement in a drug conspiracy charge, of which she must serve at least 85 percent of the sentence. The referee found that R.J. has been unsuccessful in addressing her chemical addiction, that R.J. admits to ongoing chemical use and that her prognosis for sobriety is "guarded at best." The referee found that the services and treatment provided to R.J. have not abated the causes of deprivation and that the children continue to be deprived, which is likely to continue for the foreseeable future. The referee further found R.J. failed to establish stable and secure housing, the children have all been diagnosed with mental health issues due to trauma and "[a]ll three children need consistency, predictability and stability in their environments and with caretakers so they can progress in treatment and address the barriers to normal, healthy development." The referee also specifically found the children had been out of the parental home since April 23, 2007, exceeding 450 out of the previous 660 nights. The referee found that "at a minimum," R.J. is unable to parent the children for the next three and a half years as a result of her incarceration, and that on R.J.'s release, it is unknown if and when she would be capable of assuming her parenting responsibilities. The referee found the children will be harmed absent a termination of parental rights and, from clear

and convincing evidence, the children are in need of treatment or care as deprived children. The referee concluded it was contrary to the children's welfare to remain in the natural parents' home and that all reasonable efforts had been made to prevent removal of the children and to make it possible to return the children to their parents.

### III

[¶ 7] R.J. does not challenge the juvenile court's finding that the children were "deprived" as defined in N.D.C.C. § 27–20–02(8). Rather, she argues the court erred by finding the conditions and causes of deprivation are likely to continue. She asserts the petitioner did not clearly show she failed in her efforts to comply with the treatment plan and did not show that the circumstances for which the children were adjudicated deprived were unabated. R.J. concedes she will be unavailable to the children for approximately 48 months, but asserts she made "substantial progress" in completing the treatment plan goals and in demonstrating capacity to parent her children. She contends that she clearly demonstrated her ability to involve herself in the treatment process and that she possesses the capacity to meet the children's needs. R.J. also contends there is a "substantial likelihood" she will resume her role as a parent when she becomes available.

[¶ 8] "In determining whether the causes and conditions of deprivation will continue or will not be remedied, evidence of past deprivation alone is not enough." *Interest of E.R.*, 2004 ND 202, ¶ 7, 688 N.W.2d 384. "[T]here must [also] be prognostic evidence that forms the basis for reasonable prediction of continued or future deprivation." *Id.* Prognostic evidence, which forms the basis for a reasonable prediction as to future behavior

and includes reports and opinions of the professionals involved, must be evaluated in deciding if a child's deprivation is likely to continue. *Interest of D.F.G. and E.K.B.*, 1999 ND 216, ¶ 20, 602 N.W.2d 697. "When a parent, through voluntary actions, without reasonable justification, makes herself unavailable to care for and parent a young child, the child should not be expected to wait or assume the risk involved in waiting for permanency and stability in her life." *Interest of E.R.*, at ¶ 9.

[¶ 9] Evidence must also demonstrate "that as a result of the continued deprivation, the child is suffering, or will in the future probably suffer physical, mental, moral, or emotional harm." *Interest of E.R.*, 2004 ND 202, ¶ 10, 688 N.W.2d 384. "Assisting a parent to establish an adequate environment for the child by offering long term and intensive treatment is not mandated if it cannot be successfully undertaken in a time frame that would enable the child to return to the parental home without causing severe dislocation from emotional attachments formed during long-term foster care." *Interest of E.R.*, at ¶ 11; *see also Interest of D.D.*, 2006 ND 30, ¶ 23, 708 N.W.2d 900. Under N.D.C.C. § 27–20–32.2(2), "reasonable efforts" must be undertaken to preserve and reunify families absent aggravated or other specific circumstances. However, "[i]t is not enough that a parent indicates a desire to improve behavior; rather, the parent must be able to demonstrate present capacity, or capacity within the near future, to be an adequate parent." *Interest of D.D.*, at ¶ 26. "A parent's failure to follow through with provided services is not the fault of Social Services." *Interest of K.L.*, 2008 ND 131, ¶ 20, 751 N.W.2d 677 (quotation omitted).

"Incarceration does not alone constitute continued deprivation, but the harm

a parent's incarceration may cause the children 'may be established by prognostic evidence that a parent's current inability to properly care for the child will continue long enough to render improbable the successful assimilation of the child into a family if the parent's rights are not terminated.' *Interest of T.F.*, 2004 ND 126, ¶ 12, 681 N.W.2d 786. When a parent, voluntarily and without reasonable justification, makes himself unavailable to care for and parent young children, the children should not be expected to wait or assume the risk involved in waiting for permanency and stability in their lives. *Interest of E.R.*, 2004 ND 202, ¶ 9, 688 N.W.2d 384."

*Interest of T.A.*, 2006 ND 210, ¶ 16, 722 N.W.2d 548.

[¶ 10] Despite R.J.'s assertions to the contrary, the judicial referee's findings, as adopted by the district court, state it is unknown if and when R.J. would be capable of assuming parenting responsibilities and the causes of the children's deprivation have not abated. Based on the record, we are not left with a definite and firm conviction the juvenile court made a mistake in finding the conditions and causes of deprivation are likely to continue.

[¶ 11] R.J. also argues the juvenile court erred by finding termination of her parental rights is necessary to avoid serious physical, mental, moral or emotional harm. She asserts the evidence shows the children have been thriving in their maternal grandmother's home for the past two years and the prognosis is good if they continue their close relationship with their grandmother. R.J. argues terminating her parental rights would jeopardize the children's placement with the maternal grandmother and would cause potential harm to the children's stability rather than prevent additional harm. R.J. thus contends termination of her parental rights poses no benefit, but instead presents a potential harm to the children.

[¶ 12] However, the judicial referee made specific findings that all three children have been diagnosed with mental health problems due to trauma and need consistency, predictability, and stability in their environments and with caretakers to make progress in treatment and address barriers to normal, healthy development. In fact, R.J.'s argument effectively concedes that further harm has actually been avoided by placing the children outside of the parental home with their maternal grandmother. Moreover, the termination is sustained by the referee's finding that the children had spent more than 450 out of the previous 660 nights out of the parental home. *See* N.D.C.C. § 27-20-44(1)(c)(2).

[¶ 13] Based on the record, we are not left with a definite and firm conviction the judicial referee's findings supporting the termination of R.J.'s parental rights, as adopted by the juvenile court, are clearly erroneous.

## IV

[¶ 14] Generally, there is no federal or state constitutional right to an appeal. *See City of Grand Forks v. Riemers*, 2008 ND 153, ¶ 5, 755 N.W.2d 99; *State v. Causer*, 2004 ND 75, ¶¶ 22, 25, 678 N.W.2d 552; *Reub's Minot Camera, Inc. v. General Elec. Credit Corp.*, 201 N.W.2d 877, 879 (N.D.1972). Article VI, § 6 of the North Dakota Constitution provides: "Appeals shall be allowed from decisions of lower courts to the supreme court as may be provided by law." As such, we have held that the right to appeal in this state is governed solely by statute. *State v. Hatlewick*, 2005 ND 125, ¶ 15, 700 N.W.2d 717; *In re A.B.*, 2005 ND 216, ¶ 5, 707 N.W.2d 75; *State v. Keilen*, 2002 ND 133, ¶ 7, 649

N.W.2d 224. Section 27–20–56, N.D.C.C., provides that an aggrieved party may appeal from the juvenile court's final order, judgment, or decree. Once the statutory right to appeal has been provided, this Court has promulgated rules to provide for those procedural and statutory rights. When applying the rules and statutes, it is then possible to raise procedural and substantive challenges. *See, e.g., Ables v. Fones*, 587 F.2d 850, 851–852 (6th Cir. 1978). Here, R.J. claims that her procedural due process rights were infringed by a rule of this Court.

[¶ 15] R.J. argues N.D.R.App.P. 2.2, which requires an expedited appeal from an order terminating parental rights, infringes on her constitutional right to procedural due process. She asserts that due process encompasses her ability for a meaningful review of the factual basis for the decision to terminate her parental rights and that counsel and this Court must possess the material facts contained in the juvenile court's record. Although R.J. suggests the expedited appeal required under N.D.R.App.P. 2.2 compromised her ability to obtain the record, she does not specify how her appeal was negatively impacted by the expedited briefing schedule. Despite R.J.'s protestations that N.D.R.App.P. 2.2 does not further any legitimate state interest and undermines her procedural due process protections, she cites to no harm suffered by her as a result of the expedited appeal.

[¶ 16] The Fourteenth Amendment of the United States Constitution provides that no state may "deprive any person of life, liberty or property, without due process of law...." U.S. Const. amend. XIV, § 1. Further, the North Dakota Constitution provides: "No person shall ... be deprived of life, liberty or property without due process of law." N.D. Const. art. I, § 12. "The fundamen-tal requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quotation omitted).

[¶ 17] This Court has said that although " '[a] parent's relationship with a biological child is entitled to consti-tutional protection, ... that relationship is neither absolute nor unconditional.' " *Interest of D.C.S.H.C.*, 2007 ND 102, ¶ 13, 733 N.W.2d 902 (quoting *Adoption of S.A.L.*, 2002 ND 178, ¶ 10, 652 N.W.2d 912). Before permanently severing a par-ent's relationship with a child, a court must grant the parent " 'certain procedural pro-tections afforded by due process.' " *Inter-est of D.C.S.H.C.*, at ¶ 13 (quoting *Adop-tion of S.A.L.*, at ¶ 10). In analyzing whether a challenged procedure passes constitutional muster, this Court applies a three-part balancing test:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Govern-ment's interest, including the function involved and the fiscal and administra-tive burdens that the additional or substitute procedural requirement would entail.

*"Adoption of S.A.L.*, 2002 ND 178, ¶ 11, 652 N.W.2d 912 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)); *see, e.g., Santo-sky v. Kramer*, 455 U.S. 745, 758, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ('In parental rights termination proceedings, the private interest affected is com-manding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental in-terest favoring that standard is compar-

atively slight.... Use of a "fair preponderance of the evidence" standard in such proceedings is inconsistent with due process.'); *Adoption of J.W.M.*, 532 N.W.2d 372, 377–80 (N.D.1995) (applying the *Eldridge* factors and concluding the denial of a parent's request for a transcript of the adoption hearing for review and cross-examination of adverse witnesses 'did not result in an unacceptable risk of an erroneous factual decision')[, *overruled on other grounds, Adoption of S.R.F.*, 2004 ND 150, ¶ 7, 683 N.W.2d 913 (overruling cases applying a de novo review under the Revised Uniform Adoption Act) ]."

*Interest of D.C.S.H.C.*, at ¶ 14; *see Eldridge*, at 335, 96 S.Ct. 893.

[¶ 18] Here, R.J. asserts the alleged due process violation is her required use of the expedited appeal procedures under N.D.R.App.P. 2.2. However, she has not cited any negative effect resulting in the application of this rule to her case. Although R.J.'s motion for an extension of time to file a brief was denied, she was ultimately permitted to file a brief and granted oral argument. She has not asserted her present appeal was deficient, only that the expedited review presented difficulties in obtaining the record and in preparing her brief. Nonetheless, the record is before us, and she neither has demonstrated any effect on her interests occurred as a result of the application of the expedited appeal rule, nor has she shown any risk of an erroneous deprivation of her interests through the procedures used. Based on the facts and circumstances, we conclude the alleged due process violation—the application of the expedited appeal procedures under N.D.R.App.P. 2.2— did not result in an unacceptable risk of an erroneous deprivation of R.J.'s interests.

[¶ 19] We therefore conclude that N.D.R.App.P. 2.2 did not unconstitutional-

ly infringe on R.J.'s right to procedural due process.

## V

[¶ 20] The juvenile court order is affirmed.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.