2013 ND 205

**In the Interest of C.N., a child**

**Barbara L. Whelan, Petitioner and Appellee**

v.

**C.G., father of the child, Respondent and Appellant.**

**No. 20130231.**

Supreme Court of North Dakota.

Nov. 21, 2013.

Barbara L. Whelan, State's Attorney, Walsh County Courthouse, Grafton, ND, petitioner and appellee; submitted on brief.

Jay Dennis Knudson, Grand Forks Public Defender Office, Grand Forks, ND, for respondent and appellant.

CROTHERS, Justice.

[¶ 1] C.G. appeals from a juvenile court judgment terminating his parental rights and directing him to pay child support for his son, C.N. C.G. argues that the juvenile court was clearly erroneous in finding C.N. is a deprived child and that aggravated circumstances warrant termination. C.G. argues the juvenile court erred in ordering C.G. to pay child support despite terminating his parental rights. We affirm the judgment terminating the parental rights of C.G. and ordering him to provide child support.

I

[¶ 2] C.N. was born in March 2009 and resides with his mother and siblings in Grafton. C.N. never has been in the custody of any agency or person other than his mother. C.G. is C.N.'s biological father.

[¶ 3] C.G. was arrested in January 2009 and charged with continuous sexual abuse of a child in violation of N.D.C.C. § 12.1–20–03.1, a class AA felony. After a jury trial, C.G. was sentenced to life imprisonment and after serving thirty years, the balance of the sentence was suspended for a period of twenty years of supervised probation. C.G. continuously sexually abused C.N.'s half-sister who C.N. currently lives with and foreseeably will continue to live with indefinitely. C.G. has been incarcerated since before C.N.'s birth and will be incarcerated until well after C.N.'s eighteenth birthday. C.N. does not know C.G., and if asked who his father is, C.N. states his father is the biological father of his half-siblings.

[¶ 4] C.G. appealed his conviction for continuous sexual abuse of a child, arguing that the district court erred by failing to use a special verdict form, that insufficient evidence existed to support his conviction, that the court erred in refusing to consider his challenge of the makeup of the jury and that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment. *State v. Gomez*, 2011 ND 29, ¶ 1, 793 N.W.2d 451. This Court affirmed that judgment. *Id.*

[¶ 5] While incarcerated, C.G. attempted to communicate with C.N.'s mother to obtain visitation and contact with C.N. The juvenile court judge allowed this communication because only C.G.'s probation terms limited contact and C.G. still is incarcerated. C.N.'s mother asserted the communications caused her great distress. The State brought this action to terminate C.G.'s parental rights. The juvenile court found C.N. is a deprived child and aggravated circumstances are present. The juvenile court terminated C.G.'s parental rights, directing him to pay child support for C.N.

II

[¶ 6] "Under N.D.C.C. § 27–20–44(1)(b)(1), parental rights may be terminated if there is clear and convincing evidence: (1) the child is a deprived child; (2) the conditions and causes of the deprivation are likely to continue; and (3) the child is suffering, or will in the future, probably suffer serious physical, mental, moral or emotional harm." *Interest of D.D.*, 2006 ND 30, ¶ 18, 708 N.W.2d 900. "Clear and convincing evidence means evidence that leads to a firm belief or conviction the allegations are true." *In re M.G.*, 2010 ND 157, ¶ 10, 786 N.W.2d 710 (quoting *Interest of D.H.*, 2010 ND 103, ¶ 19, 783 N.W.2d 12). Certain aggravated circumstances also may result in the termination of parental rights, such as prohibited conduct toward children and a lengthy

incarceration. N.D.C.C. § 27–20–02(3)(e), (f)(2).

[¶ 7] This Court will not overturn a juvenile court's findings of fact in a termination of parental rights case unless the findings are clearly erroneous. *M.G.*, 2010 ND 157, ¶ 10, 786 N.W.2d 710. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made." *In re D.M.*, 2007 ND 62, ¶ 6, 730 N.W.2d 604 (citation omitted).

## III

### A

[¶ 8] C.G. asserts his parental rights should not have been terminated, arguing C.N. is not a deprived child because he does not suffer from physical, mental or emotional hardship as a result of C.G.'s incarceration and because C.N.'s mother is capably raising him.

[¶ 9] A "deprived child" is a child "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian." N.D.C.C. § 27–20–02(8)(a). "A parent must be able to demonstrate present capability, or capability within the near future, to be an adequate parent." *Interest of K.L. and M.S.*, 2008 ND 131, ¶ 23, 751 N.W.2d 677 (citation omitted).

[¶ 10] The juvenile court concluded C.N. was a deprived child because C.G. is incarcerated and will remain so well beyond C.N.'s eighteenth birthday. The juvenile court also found C.N. was a deprived child because C.G. sexually abused C.N.'s half-sister and the two children live together. Further, the juvenile court found C.G. has not shown an ability to live a law-abiding life because he has an extensive record consisting of forty-five criminal charges. The juvenile court did not explicitly discuss that C.N.'s deprivation is likely to continue and that C.N. is suffering or will in the future suffer serious physical, mental, moral or emotional harm. However, the juvenile court addressed those elements by finding clear and convincing evidence that the sibling relationship between C.N. and his sexually abused half-sister will continue indefinitely and that C.G.'s continued incarceration will prevent him from ever participating in active parental care while C.N. is a minor.

[¶ 11] C.G.'s argument that C.N. cannot be classified as a deprived child because C.N.'s mother is capably raising him also fails. The relevant inquiry is whether C.G. can provide proper parental care for the child, which C.G. cannot do while incarcerated. *See, e.g., In re C.R.*, 1999 ND 221, ¶¶ 5–6, 602 N.W.2d 520 (finding under a deprivation analysis that a child's positive development in foster care does not negate an incarcerated individual's inability to provide proper parental care for the child); *see also In re M.H.S.*, 261 Ga.App. 686, 583 S.E.2d 471 (2003) (finding that a child was "deprived," as required to terminate the child's incarcerated father's parental rights, where the child lived with its mother because the father raped a third party, wrote a threatening note to the child's mother and would not be eligible for parole until the child is twenty-seven years old).

[¶ 12] The juvenile court's finding C.N. is a deprived child in regard to C.G. is supported by the evidence and is not clearly erroneous.

## B

[¶ 13] C.G. argues the juvenile court has discretion whether to terminate parental rights upon a finding of aggravated circumstances because no explicit mandate requires it to do so. C.G. asserts that none of the evidence presented indicates C.N. is harmed physically, mentally or emotionally because C.G. is his father and that the juvenile court therefore should not have found aggravated circumstances.

[¶ 14] The aggravated circumstances statute, N.D.C.C. § 27–20–02(3)(c), includes the offense of Continuous Sexual Abuse of a Child in violation of N.D.C.C. § 12.1–20–03.1. C.G. was convicted of continuously sexually abusing C.N.'s half-sister, who lives with C.N. and their mother. Aggravated circumstances also include incarceration for which the release date is twice the age of the minority child's current age. N.D.C.C. § 27–20–02(3)(f). C.G. will be incarcerated well past double C.N.'s current age because C.N. was born in 2009, and C.G.'s release date will likely be sometime after 2030.

[¶ 15] The juvenile court's finding C.N. is subjected to aggravated circumstances is supported by the evidence and is not clearly erroneous.

## IV

[¶ 16] C.G. argues the effect of the juvenile court's termination of his parental rights precludes an obligation to pay continued child support because the statute used to terminate his parental rights may not be read in concert with a separate statute requiring continued payment of child support.

[¶ 17] Parental rights may be terminated under both the Uniform Juvenile Court Act, N.D.C.C. § 27–20–44, and as part of an adoption proceeding under the Uniform Adoption Act, N.D.C.C. § 14–15–19. C.G.'s parental rights were terminated under the Juvenile Court Act. N.D.C.C. § 27–20–44. The juvenile court also cited the domestic relations chapter, N.D.C.C. § 14–09–08.21, in its provision for the continuation of child support payments despite the termination of C.G.'s parental rights.

[¶ 18] When "a general provision in a statute is in conflict with a special provision ... in another statute, the two must be construed, if possible, so that effect may be given to both provisions." N.D.C.C. § 1–02–07. The juvenile court terminated C.G.'s parental rights under the Uniform Juvenile Court Act, which provides that "[a]n order terminating parental rights of a parent terminates all the parent's rights and obligations with respect to the child...." N.D.C.C. § 27–20–46(1). The domestic relations chapter, however, provides that "[a] termination of parental rights does not terminate the duty of either parent to support the child before the child's adoption...." N.D.C.C. § 14–09–08.21. When construed together, the special provision contained in N.D.C.C. § 14–09–08.21 serves as an exception to the termination of all duties contemplated by N.D.C.C. § 27–20–46 and requires continued child support payments. Although this Court considers the provisions to be reconcilable under N.D.C.C. § 1–02–07, were it to consider the provisions as irreconcilable, the later enacted N.D.C.C. § 14–09–08.21 and its provision that child support may be required even after the termination of parental rights would control the case and the result would be the same. See N.D.C.C. § 1–02–07 (when there is an irreconcilable conflict between two statutory provisions, a particular statute prevails over a general statute).

[¶ 19] The juvenile court did not err in requiring C.G. to provide continued child support payments after his parental rights were terminated.

## V

[¶ 20]   We conclude the juvenile court was not clearly erroneous in finding that C.N. is a deprived child and that C.N. is subjected to aggravated circumstances. The juvenile court correctly ordered C.G. to pay child support while also terminating his parental rights.   We affirm the judgment terminating the parental rights of C.G. and ordering him to provide child support.

[¶ 21]   GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM.   JJ., concur.