2015 ND 233

**Interest of M.R., a child**

**Betsey Johnson, L.S.W., Petitioner
and Appellee**

v.

**S.R., V.G., G.L., and John
Doe, Respondents**

**G.L., Appellant.**

No. 20150175.

Supreme Court of North Dakota.

Sept. 17, 2015.

Rehearing Denied Dec. 1, 2015.

Pam H. Ormand, Assistant State's Attorney, Fargo, ND, for petitioner and appellee.

Mark T. Blumer, Fargo, ND, for appellant.

KAPSNER, Justice.

[¶ 1] G.L. appeals from a juvenile court order terminating his parental rights. He argues the juvenile court erred by declaring him in default, finding the conditions and causes of the child's deprivation were likely to continue, and determining the Indian Child Welfare Act ("ICWA") did not apply. We affirm the juvenile court's order.

I

[¶ 2] M.R., the child at issue, was placed in the custody of social services due to concerns that her mother was unfit to care for her. After the child was placed into custody, a social services employee petitioned for termination of parental rights. The petition stated that paternity had not been confirmed, but it noted an individual named V.G. could be the father. It was subsequently established that V.G. was not the father. G.L. then came forward claiming to be the father, but his paternity was never confirmed by biological testing. At a hearing on the petition, M.R.'s mother appeared and stated she

desired to voluntarily relinquish her parental rights.

[¶ 3] In an interim order, the juvenile court noted ICWA may apply because G.L. was a member of the Spirit Lake Sioux Tribe. The juvenile court then sent notices of the right to intervene to the tribe. In response, Spirit Lake Tribal Social Services sent a letter stating that, after reviewing the case, the tribal court and the ICWA director "would support the current Termination of Parental Rights in order to establish permanency for [M.R.]." Noting G.L. had refused paternity testing, the tribe indicated it would not intervene unless there was biological proof G.L. was M.R.'s father.

[¶ 4] At the hearing on termination of parental rights, G.L.'s counsel was present, but G.L. failed to appear. His counsel requested a continuance so G.L. could be present; the court denied the motion. G.L.'s attorney told the court he had recently learned that G.L. was incarcerated in Polk County, Minnesota. The court then took a recess to allow G.L.'s attorney to contact G.L. to determine whether he could appear by telephone. After the recess, G.L.'s attorney informed the court that he chose not to attempt to contact G.L. "based on all the conversations [he] had previously with [G.L.]." The hearing then proceeded in G.L.'s absence.

[¶ 5] During the hearing, a social worker testified G.L. had signed an acknowledgment of paternity and that the Department of Vital Records had created a new birth certificate for M.R. listing G.L. as the father. The social worker also testified G.L. had an extensive criminal history, he had spent most of his adult life incarcerated, he had other children whom he did not play an active role in parenting, he had significant problems with alcohol abuse, and he has had difficulty maintaining housing, employment, or any kind of stability. The juvenile court terminated G.L.'s parental rights, stating "[i]t is believed that [G.L.] may be incarcerated in Polk County," and G.L. "was served with proper notice" of the trial date. The court explained it had terminated G.L.'s parental rights after finding reasonable efforts were made to prevent the removal of M.R. from the home, that termination was in M.R.'s best interests, and G.L. was "in default for failing to appear or participate in these proceedings."

II

[¶ 6] G.L. argues the juvenile court erred when it declared him in default and that it did not afford him due process when it terminated his parental rights while he was not present. A juvenile court may terminate parental rights if: (1) the child is deprived; (2) the conditions and causes of the deprivation are likely to continue or will not be remedied; and (3) the child is suffering, or will in the future probably suffer serious physical, mental, moral, or emotional harm. N.D.C.C. § 27–20–44(1)(c); *see also Interest of K.B.*, 2011 ND 152, ¶ 7, 801 N.W.2d 416. "The party seeking parental termination must prove all elements by clear and convincing evidence." *K.B.*, at ¶ 7. Clear and convincing evidence is "evidence that leads to a firm belief or conviction the allegations are true." *Interest of T.A.*, 2006 ND 210, ¶ 10, 722 N.W.2d 548. A court's decision to terminate an individual's parental rights is a question of fact, and that decision will not be overturned unless it is clearly erroneous. *Interest of M.B.*, 2006 ND 19, ¶ 13, 709 N.W.2d 11. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, no evidence exists to support it, or if it is clear a mistake has been made. *Anderson v. Resler*, 2000 ND 183, ¶ 8, 618 N.W.2d 480.

## A

[¶ 7] G.L. argues the juvenile court erred when it declared him in default. Under N.D.R.Juv.P. 10(a)(3):

Except in a continued foster care matter under N.D.C.C. § 27–20–30.1, the parent, guardian or custodian of a child must be present at all hearings unless excused by the court. If such person fails to attend a hearing with the child without excuse, the court may order a law enforcement officer to take the person into custody and bring the person before the court. The court may hold the person in contempt. The court may proceed if it is in the best interests of the child to do so even if the parent, guardian, or custodian fails to appear.

G.L. appeared through counsel but failed to appear in person. The juvenile court may receive evidence in support of a petition for default, and it may declare default on a party who has failed to appear. N.D.R.Juv.P. 10(b).

[¶ 8] In *Interest of J.C.*, we determined the juvenile court erred when it declared default and terminated a mother's parental rights because the juvenile court did not hear "any evidence to support the termination." 2007 ND 111, ¶ 1, 736 N.W.2d 451. In the present case, however, two licensed social workers presented testimony regarding the evidentiary basis for terminating G.L.'s parental rights. In addition, after G.L.'s attorney informed the court that he believed his client was incarcerated, the court provided G.L.'s attorney the opportunity to call G.L. to see whether he could appear telephonically. G.L.'s attorney then notified the court that G.L. had expressed a preference to appear only in person, and he decided not to call G.L. On appeal, G.L. argues the court erred when it did not require his attorney to notify him he could appear by telephone. Courts are not required to second guess

attorney's statements regarding their client's decision not to appear telephonically at a parental rights termination trial. Consequently, we hold the juvenile court did not err when it declared G.L. was in default.

## B

[¶ 9] G.L. asserts he was denied due process. He argues the juvenile court should not have proceeded with the trial without notifying him that his motion for a continuance was not granted and informing him that he had the option of appearing by telephone.

[¶ 10] Although parents have a fundamental right to raise their children, such a right is not absolute or unconditional. *Interest of J.C.*, 2007 ND 111, ¶ 12, 736 N.W.2d 451. "Generally, procedural due process requires fundamental fairness, which, at a minimum, necessitates notice and a meaningful opportunity for a hearing appropriate to the nature of the case." *St. Claire v. St. Claire*, 2004 ND 39, ¶ 6, 675 N.W.2d 175. "The requirements of due process are flexible and vary depending upon the circumstances of each case." *Id.* at ¶ 7. However, "[p]arents do not have a constitutional due process right to appear at proceedings to terminate their parental rights, and their due process rights are satisfied if they are represented by counsel and have an opportunity to appear by deposition or other discovery technique." *J.C.*, at ¶ 12. An individual's right to appear may be satisfied by allowing an appearance via telephone. *St. Claire*, at ¶ 6.

[¶ 11] G.L. was served with proper notice of the trial's date, and he was represented by counsel at the trial. In addition, when the juvenile court realized G.L. was not present, it took a recess to allow G.L.'s attorney to notify him he could appear telephonically. The attorney advised the court he had previously discussed with

G.L., G.L.'s preferences · regarding telephonic appearances. Consequently, we conclude the juvenile court took sufficient measures to afford G.L. due process.

## C

 [¶ 12] G.L. argues the juvenile court erred by finding the conditions and causes of the child's deprivation were likely to continue.

 [¶ 13] In a case involving the termination of parental rights, the petitioner must establish by clear and convincing evidence that the child is deprived and that the causes and conditions of deprivation are likely to continue. See N.D.C.C. § 27–20–44(1)(c)(1); see also Interest of K.B., 2011 ND 152, ¶ 7, 801 N.W.2d 416. A child is deprived if the child is:

> without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian. . . .

N.D.C.C. § 27–20–02(8)(a). Parents' conduct when raising a child must satisfy the minimum standard of care the community will tolerate. Interest of G.R., 2014 ND 32, ¶ 8, 842 N.W.2d 882. A parent must show he or she has the present capability, or capability within the near future, to be an adequate parent. Id. "In determining whether the causes and conditions of deprivation will continue or will not be remedied, evidence of past deprivation alone is not enough." Interest of K.J., 2010 ND 46, ¶ 8, 779 N.W.2d 635. "Prognostic evidence, which forms the basis for a reasonable prediction as to future behavior and includes reports and opinions of the professionals involved, must be evaluated in deciding if a child's deprivation is likely to continue." Id.

 [¶ 14] Between the time G.L. came forward asserting he was the father and the order terminating his parental rights, he was often incarcerated or involved in incidents requiring law enforcement involvement. Most of these incidents included conduct that implicates parenting ability: domestic disturbances, disorderly conduct, and driving under the influence with a child passenger. In addition, social services offered parenting time and assistance to G.L., but he did not take advantage of these opportunities. When parents, through voluntary actions, without reasonable justification, make themselves unavailable to care for their child, the child should not be subjected to the risks of waiting for permanency and stability. See Interest of E.R., 2004 ND 202, ¶ 9, 688 N.W.2d 384; see also Interest of C.R., 1999 ND 221, ¶ 12, 602 N.W.2d 520. We hold the juvenile court's finding that the conditions and causes of M.R.'s deprivation were likely to continue was not clearly erroneous.

## III

 [¶ 15] G.L. asserts the trial should have been continued until a determination could be made regarding whether G.L., a member of the Spirit Lake Sioux Tribe, was M.R.'s biological father, and then whether ICWA's heightened standards applied. We note the juvenile court, in its order terminating parental rights, made the inartful statement that "[t]he Indian Child Welfare Act does not apply. . . ." We interpret the court's statement to hold the heightened standards of ICWA did not apply rather than the Act itself. The court, by sending notices of the right to intervene to the tribe, complied with ICWA.

 [¶ 16] "ICWA's heightened standards for termination of parental

rights apply only if an Indian child, as defined in the Act, is involved, and the district court must make a threshold determination that an Indian child is involved in the case." *Adoption of C.D.*, 2008 ND 128, ¶ 9, 751 N.W.2d 236. If a court knows or has reason to know an Indian child is involved in an involuntary custody proceeding, the Indian child's tribe must be notified of the proceeding and of the tribe's right to intervene. 25 U.S.C. § 1912(a) (2013). ICWA defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4) (2013). A tribe's determination regarding its own membership and membership eligibility is binding and conclusive. *C.D.*, at ¶ 18. The burden of proof is upon the party asserting ICWA's applicability to produce evidence for the court to decide whether a child is an Indian child. *Id.* at ¶ 19. *See also Interest of A.S.*, 614 N.W.2d 383, 385 (S.D.2000).

[¶ 17] For ICWA's heightened standards to apply in this case, G.L. had the burden of establishing M.R. was an Indian child; he did not meet this burden. G.L. has not established that M.R. is a member of an Indian tribe or that M.R. is the biological child of a member of an Indian tribe. The social worker testified G.L. refused paternity testing, at no cost to him, on at least two occasions. G.L. argues the Department of Vital Record's creation of a birth certificate naming him as the father was enough to establish paternity. However, even if the birth certificate was valid, it is not enough to establish ICWA's standards applied. The juvenile court sent a notice of right to intervene to the Spirit Lake Sioux Tribe. The Spirit Lake Tribal Court and the tribe's ICWA director indicated the tribe would not intervene until biological testing confirmed parentage. The juvenile court, by sending notice to the tribe, fulfilled ICWA's requirements. The tribe's decision not to intervene because G.L. has failed to meet his burden under ICWA does not constitute error on the part of the juvenile court.

IV

[¶ 18] We conclude the juvenile court did not err when it terminated G.L.'s parental rights, and we affirm its order.

[¶ 19] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.