# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

—————

2018 ND 265

—————

In the Matter of the Adoption of A.S.

C.N.D.,            Petitioner

v.

C.M.A.S.,            Respondent and Appellant

and

A.S., North Dakota Department
of Human Services,            Respondents

and

M.S. and C.S.,            Interested Parties and Appellees

—————

No. 20180326

—————

In the Matter of the Adoption of Z.S.

C.N.D.,            Petitioner

v.

C.M.A.S.,            Respondent and Appellant

and

Z.S., North Dakota Department
of Human Services,            Respondents

and

M.S. and C.S.,                                          Interested Parties and Appellees

--------------------------------

No. 20180327

--------------------------------

Appeal from the District Court of Ward County, North Central Judicial District, the Honorable Richard L. Hagar, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Kyle R. Craig, Minot, ND, for respondent and appellant.

Erica J. Shively, Bismarck, ND, for interested parties and appellees.

**McEvers, Justice.**

[¶1]    C.S. appeals from a district court's order terminating his parental rights to A.S. and Z.S.  C.S. argues the district court erred in finding he abandoned the children and finding the causes of deprivation were likely to continue.  We affirm, concluding the district court did not clearly err in finding the causes of deprivation were likely to continue.

I

[¶2]    In August 2017, C.D. petitioned to terminate her and C.S.'s parental rights to A.S. and Z.S., and to place the children in an adoptive home through an identified adoption placement.  In her petitions, C.D. alleged it was in the best interests of the children to terminate C.S. and C.D.'s parental rights and that remaining in C.S. or C.D.'s care was contrary to the children's welfare and wellbeing.  In March 2018, the district court held a hearing on the matter and heard evidence relating to C.S.'s history of incarceration, living arrangements, abuse of C.D., abandonment of the children, and history of drug use.

[¶3]    C.S., the biological father, and C.D., the biological mother, had two children, A.S., born in January 2014, and Z.S., born in August 2015.  C.S. and C.D. were never married, but they lived together periodically.  C.S. and C.D. began to use drugs in 2012 and continued to use drugs regularly until November 2017, when both claimed they attempted sobriety.

[¶4]    C.D. and C.S. got into an altercation and C.S. attempted to "run off" with A.S.  At the time of the altercation, C.D. was pregnant with Z.S.  As a result of the

1

altercation, a year-long protection order was issued in 2015 in Minnesota, prohibiting C.S. from contacting C.D.

[¶5] C.D. testified C.S. has only seen Z.S. three times since his birth and Z.S. does not know C.S. C.S. admitted that during 2015 and 2016, he was incarcerated for 157 days, including time spent at a rehabilitation center in Jamestown and in the last two years he has been incarcerated for approximately six months. C.S. was on supervised probation, and was participating in the drug court program since November 2017. C.S. admitted to using methamphetamine in February 2018. C.S.'s probation officer testified that the drug court program is, at a minimum, a 12-month program. The probation officer also testified that due to C.S.'s inability to meet the requirements of the drug court program, he was placed in Centre, Inc., a halfway house, to achieve residential stability. C.S. testified he will continue to reside at Centre, Inc., for an undetermined amount of time, and the children would not be able to reside there with him. C.S. testified the last time he saw either Z.S. or A.S. was Father's Day of 2017. C.S. admitted he was at risk to use drugs again if his parental rights are terminated.

[¶6] C.S. testified he provided support to A.S. and Z.S. when his wages were garnished. Since 2015, C.S. had convictions for false reports to law enforcement officers, possession of controlled substances, unauthorized use of personal identifying information, burglary, theft, possession of drug paraphernalia, and possession of a concealed weapon.

[¶7] In July 2018, the district court entered an order terminating the parental rights of C.S. and C.D. C.S. appealed from the court's order terminating his parental rights, arguing that the court erred by (1) finding he abandoned his children, and (2) determining the causes of deprivation were likely to continue.

II

[¶8] Section 14-15-19(3), N.D.C.C., authorizes a court to terminate parental rights on the ground:

   a.    That the minor has been abandoned by the parent;

2

      b.      That by reason of the misconduct, faults, or habits of the parent or the repeated and continuous neglect or refusal of the parent, the minor is without proper parental care and control, or subsistence, education, or other care or control necessary for the minor's physical, mental, or emotional health or morals, or, by reason of physical or mental incapacity the parent is unable to provide necessary parental care for the minor, and the court finds that the conditions and causes of the behavior, neglect, or incapacity are irremediable or will not be remedied by the parent, and that by reason thereof the minor is suffering or probably will suffer serious physical, mental, moral, or emotional harm; or

      c.      That in the case of a parent not having custody of a minor, the noncustodial parent's consent is being unreasonably withheld contrary to the best interest of the minor.

"The petitioner must establish all of the elements for termination by clear and convincing evidence." *In re G.R.*, 2014 ND 32, ¶ 5, 842 N.W.2d 882 (citation omitted). "Clear and convincing evidence is evidence that leads to a firm belief or conviction the allegations are true." *Id.* (citation omitted).

[¶9] "A court's decision to terminate an individual's parental rights is a question of fact, and that decision will not be overturned unless it is clearly erroneous." *In re M.R.*, 2015 ND 233, ¶ 6, 870 N.W.2d 175. A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, the Court is left with a definite and firm conviction a mistake has been made. *In Interest of A.B.*, 2017 ND 178, ¶ 12, 898 N.W.2d 676. This Court does not re-weigh evidence, and gives "due regard to the trial court's opportunity to judge the witnesses' credibility." *Id.* at ¶ 12.

A

[¶10] C.S. argues the district court erred in determining the causes of deprivation for the children were likely to continue because in reaching its decision, the court relied "solely" on past evidence of C.S.'s incarceration. C.S. does not appeal the district court's finding of deprivation.

[¶11] For a finding of continued deprivation, this Court has said:

3

To determine whether the conditions and causes of the deprivation are likely to continue, evidence of past or present deprivation alone is insufficient, but evidence of the parent's background, including previous abuse or deprivation, may be considered. The amount of contact the parent has had with the child may also be considered. Prognostic evidence or evidence that forms the basis for a reasonable prediction as to future behavior must be evaluated. Prognostic evidence includes the reports and opinions of the professionals involved.

*In re D.F.G.*, 1999 ND 216, ¶ 20, 602 N.W.2d 697 (internal citations omitted).

Furthermore,

[i]ncarceration does not alone constitute continued deprivation, but the harm a parent's incarceration may cause the children "may be established by prognostic evidence that a parent's current inability to properly care for the child will continue long enough to render improbable the successful assimilation of the child into a family if the parent's rights are not terminated." When a parent, voluntarily and without reasonable justification, makes himself unavailable to care for and parent young children, the children should not be expected to wait or assume the risk involved in waiting for permanency and stability in their lives.

*In re K.J.*, 2010 ND 46, ¶ 9, 779 N.W.2d 635 (citing *In re T.A.*, 2006 ND 210, ¶ 16, 722 N.W.2d 548 (citations omitted)).

[¶12]  C.S.'s probation officer testified the earliest C.S. could be released from the drug court program is November 2018 with complete compliance with the program, but the year-long minimum can be extended. Since beginning drug court, C.S. admitted to violating the program's policy against drug usage by snorting and smoking methamphetamine in February 2018. C.S.'s probation officer testified that C.S. was placed on "day reporting" due to instances where he was late or wholly failed to attend the intensive outpatient treatment. C.S. failed to meet the daily reporting requirements. As a result of his noncompliance with the "day reporting" and the drug usage, C.S. was placed at Centre, Inc., resulting in C.S. being unable to provide a home for A.S. and Z.S.

[¶13]  "Failure to follow the recommendations for addiction recovery demonstrates an indifference toward one's obligations and responsibilities as a parent." *In re E.R.*,

4

2004 ND 202, ¶ 8, 688 N.W.2d 384 (citation omitted).  The district court made the following findings in its order terminating parental rights:

> [C.S.] has not exercised parental care for his two minor children. [C.S.] has not contributed in any positive way to the children's physical, mental, or emotional health, or their morals.  The children were without a stable living environment, received inadequate medical care, were exposed to violence and drug usage, and were not given the love and affection necessary for an infant to establish that most important requirement of emotional bonding.
>
> Additionally, there was no evidence presented to provide any reasonable expectation that such deprivation of the children, by [C.S.'s] misconduct, faults, habits, and neglect, will stop, or in any way be remedied, in the near future.  These two children have suffered, and would continue to suffer, under the lack of care given by [C.S.].

"When a parent, through voluntary actions, without reasonable justification, makes herself unavailable to care for and parent a young child, the child should not be expected to wait or assume the risk involved in waiting for permanency and stability in her life." *E.R.*, at ¶ 9 (citation omitted).

[¶14]   Finally, a licensed social worker overseeing the transition of A.S. and Z.S. into the identified adoptive home testified A.S. needs intensive therapy.  The social worker expressed concern for the basic care of A.S. and Z.S.—their food, shelter, safety—considering C.S.'s use of illegal substances, residential instability, and inability to tend to the emotional needs of the children.  C.S. had no substantive plan to address A.S.'s behavioral issues.

[¶15]   There was clear and convincing prognostic evidence the deprivation is likely to continue and will not be remedied in the near future if C.S.'s rights are not terminated.  We conclude the district court's finding that the deprivation is likely to continue is not clearly erroneous.

B

[¶16] C.S. argues the district court erred in finding he abandoned A.S. and Z.S. Because N.D.C.C. § 14-15-19(3) provides three independent grounds for terminating parental rights, and because we have affirmed the court's finding, under subsection (b), that the deprivation is likely to continue, we need not address the issue of abandonment. "We need not address questions, the answers to which are unnecessary to the determination of an appeal." *Olander Contracting Co. v. Gail Wachter Invs.*, 2002 ND 65, ¶ 48, 643 N.W.2d 29 (citations omitted).

III

[¶17] The order terminating parental rights is affirmed.

[¶18] Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Gerald W. VandeWalle, C.J.